DOUGHERTY v. THE MISSOURI RAILROAD COMPANY, *Plaintiff in Error.*

1. **Carrier of Passengers**: INJURY TO PASSENGER: CONNECTION BETWEEN INJURY AND MISCONDUCT OF CARRIER: POOOF OF. In an action for damages against a street railway by a passenger, for an injury received in consequence of a sudden jerk of the car, it is not incumbent on the plaintiff to show affirmatively the immediate connection between the injury and the misconduct of the carrier, it appearing that the car was under the control of the carrier, or its servant, and that the accident was such as, under the ordinary course of things, would not have occurred had those who had the management of the car used proper care.

2. **Care Required of Carrier of Passengers.** While stch carrier of passengers is not an insurer of their safety, it is bound to use due care and vigilance, so as to safely transport them. It must allow reasonable time for them to enter and leave its vehicle with safety, in the exercise of ordinary care, and should, also, allow reasonable time for passengers to enter and take seats, if there be any, or reasonable time for them to seize the straps furnished for passengers when standing, and while it may start before a passenger has had time to take his seat, or to secure his hold on the strap, it must exercise the utmost care when thus starting, so as not to jar or upset him.

3. **Carrier of Passengers**: CARE AND NEGLIGENCE. Care and negligence are relative terms, and the degree of caution required of carrier and passenger, is to be estimated, in a measure, by the hazard to life and limb; it is always such care and vigilance as a prudent, rational person would exercise under like circumstances.

*Error to St. Louis Court of Appeals.*

AFFIRMED.

*Dyer, Lee & Ellis* for plaintiff in error.

It was incumbent on plaintiff to establish, by affirmative proof, that the defendant was guilty of negligence or want of care and diligence. *Schultz v. Railroad Co.*, 36 Mo. 32; *Nolens v. Sickel*, 3 Mo. App. 300, 308; *Ward v. Andrews*, 3 Mo. App. 275; *Boland v. Railroad Co.*, 36 Mo. 84; *Harlan v. Railroad Co.*, 65 Mo. 22; Thompson on Carriers

of Passengers, 195; Hutchinson on Carriers, 616, 618; *Hammack v. White*, 11 C. B. (N. S.) 594. The proof in this case is limited to the fact that the car started with a sudden jerk, but by reason of what force, or by whose direction, the record is wholly silent. The same degree of care is not required of the carriers of passengers upon street cars drawn by horses as of railroads, whose cars are drawn by steam. *Umber v. Street R. R. Co.*, 6 Rob. 327; s. c., 51 N. Y. 497; *Feital v. Railroad Co.*, 109 Mass. 398; 2 Waite's Actions and Defenses, p. 71; *Curtis v. Railroad Co.*, 18 N. Y. 536; *Brehm v. Railroad Co.*, 34 Barb. 256, 268. The petition does not state a cause of action. *Lee v. Manufacturing Co.*, 6 Mo. App. 578; *Wildes v. Railroad Co.*, 29 N. Y. 325; *Railroad Co. v. Marcott*, 41 Mich. 435; *Aldener v. Railroad Co.*, 37 Ia. 264, 272; *Railroad Co. v. Keely*, 23 Ind. 138; *Railroad Co. v. Taffe*, 11 Ind. 458; *Eldridge v. Railroad Co.*, 1 Sandf. 39; *Ware v. Gay*, 11 Pick. 106.

*McComas & McKeighan* for defendant in error.

It is a duty which the carrier owes a passenger, to use the utmost care and prudence in the management of cars and vehicles, and when an accident happens, and the passenger is injured, it is for the defendant to show that it was at the time in the full discharge of its duty toward the passenger. *Stokes v. Saltonstall*, 13 Pet. 181; *Railroad Co. v. Pollard*, 22 Wall. 341; *Christie v. Griggs*, 2 Camp. 79; *Lemon v. Chanslor*, 68 Mo. 340.

PHILIPS, C.—This is an action to recover damages for personal injury. After the requisite preliminary statements, the petition avers:

" That on or about the 8th day of April, 1877, the said plaintiff, for a certain consideration and reward, agreed to be paid by him to the defendant, was a passenger on one of the said defendant's cars on said line of railroad, and was exercising reasonable care and diligence, when the said defendant, its agents, servants and employes, diregarding its

and their duty to the plaintiff as such passenger, so carelessly, unskillfully and negligently managed and operated said car on said line, that the said plaintiff was suddenly and violently thrown down and against the side of the said car, and his left hand and arm thrown against and through one of the windows of the said car, whereby his hand was cut, bruised and lacerated, and the plaintiff states, that as the result of said carelessness, negligence, unskillfulness, and injuries, he has ever since been hurt and sick, and by reason thereof suffered, and still suffers great pain and anguish, and on account thereof, has been compelled to have, and has had his hand and a portion of his said arm amputated and cut off, whereby he has become permanently disabled," etc. These allegations were put in issue by the answer.

The trial was had before a jury. At the conclusion of plaintiff's evidence the court gave an instruction in the nature of a demurrer to the evidence, whereupon the plaintiff took a nonsuit with leave, etc. On writ of error to the court of appeals, this judgment of the circuit court was reversed. The defendant has brought the case here on writ of error to the court of appeals.

The plaintiff's evidence showed substantially, that about the 18th day of April, 1878, he and one McCreary approached defendant's street car on Olive street, in the city of St. Louis, between Fourth and Fifth street, for the purpose of taking passage to go home. The car stopped to admit them. Plaintiff boarded it a little in advance of McCreary. It was raining at the time, and plaintiff had an umbrella in his hand which he closed as he entered the car. The seats on the north side of the car were about full; on the south side there was one lady and perhaps another passenger. Plaintiff moved rapidly forward, about half way the length of the car, and was just in the act of turning around to take a seat on the south side, when the car started forward with a violent jerk, upsetting him. He dropped the umbrella to catch the strap, but failed to reach

it. To save himself he caught or placed his left hand against the window, but his fall was so violent that his hand crashed through the window up to his shoulder. McCreary helped to extricate his arm. His hand was badly cut. He and McCreary then left the car and went to the nearest drug store and had his hand dressed. Physicians attended on him. His hand grew worse and finally had to be amputated on the 19th of July following. He knew from traveling on the cars that straps were provided for supporting passengers when standing, etc.

McCreary testified that he had reached the door of the car at the time of the sudden start; that the jerk was unusual and so violent that it threw him against the door-facing, which he caught. Neither of these parties saw the driver or the horses, and only judged that they started the car from the movement forward.

One Jarret, who had been a street car conductor and driver on this road, testified, as to the manner of managing and starting such cars. The cars have wheels and brakes. The brake is used for stopping and starting the car in conjunction with the horses pulling it. The driver is supposed to hold the brake until the car is started smoothly. The team is managed by reins, which the driver holds firmly with one hand and the brake with the other. That by care, etc., the driver so manages the team and the brake as to start the car smoothly. Physicians testified as to the treatment of plaintiff's wound, and the character of the injury, etc.

I. The opinion of the court of appeals in this case, (9 Mo. App. 478,) is a satisfactory exposition of the law as applied to the facts in evidence. It would be unnecessary repetition to review the authorities discussed.

Defendant's counsel insist that we review the opinion, because the authorities declare that the injury must result from the negligence and fault of the defendant, and it is incumbent on the plaintiff to show affirmatively the immediate connection between the injury and the misconduct of

the carrier. The argument is, that there is no direct proof that the sudden movement of the car was occasioned by any act of the driver or team; that from aught that appears the motion may have been produced by some other agency. Without reviewing the authorities, the following proposition is clearly deducible: That where the vehicle or conveyance is shown to be under the control, or management of the carrier or his servants, " and the accident is such as, under an ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. *Scott v. Dock Co.*, 10 Jur. (N. S.) 1108; *Briggs v. Oliver*, 4 Hurl. & Col. 407; *Mullen v. St. John*, 57 N. Y. 568, 569.

The car in question was under the exclusive management of the defendant. The team and the brake were the motive power, and these were under, or should have been under, the control of the driver. By proper, or ordinary, vigilance, and management of this brake and team, the car would not have started with such violence as shown by the evidence. If the movement came from the team " under an ordinary course of things" the jerking would not, probably have happened, " if those who had the management had used proper care." The evidence showed that the motion was forward. Presumably, therefore, it came from the action of the motive power, the brake and the team. Presumptions arise on the usual and natural course of things. One of the chief grounds of evidence "is the known and experienced connection between collateral facts and circumstances satisfactorily proved, and the fact in controversy." 1 Greenlf. Ev. 17. As the team and the brake are the means by which a stationary car is put in motion, when the movement was forward, in the direction of that power, it is hardly reasonable to say it is merely conjectural that the motion came through the agency of the driver. Had the car been thus suddenly and violently jerked by the application of some other external force, not under

the control of the driver, it would have been unusual and outside of the ordinary course of things. In such case it would certainly be reasonable to require the defendant to show such fact, so peculiarly within its knowledge.

It is said by the court in *Briggs v. Oliver, supra* : " Packing cases carefully placed in a proper position do not naturally tumble down of their own accord, and we have no right to assume that the fall of this packing was caused by the act of some one who was not the defendant's servant."

In *Mullen v. St. John, supra*, the court say: "Buildings properly constructed do not fall without adequate cause. If there be no tempest prevailing, or no external violence of any kind, the fair presumption is, that the fall occurred through adequate causes, such as the ruinous condition of the building, which could scarcely have escaped the observation of the owner. The mind is thus led to a presumption of negligence on his part, which may, of course, be rebutted."

So here, the natural presumption is, that when the car started suddenly forward, it was put in motion by the driver, who had control of the motive power; and in the absence of proof that the movement was produced by some extraordinary cause, not within the control of the driver, or which he could not have prevented by the exercise of due care and vigilance, the plaintiff was entitled to a verdict.

II. With respect to the obligation of the defendant to the plaintiff as a passenger, it is sufficient to say, that while it is not an insurer of the safety of passengers, it is bound by its office, as such carrier, to exercise due care and vigilance, so as to safely transport them. It must allow reasonable time for passengers to enter and leave its car with safety, in the exercise of ordinary care. It should allow the passengers reasonable time to enter and take a seat, if there be one, or reasonable time to seize the straps furnished for passengers when standing; and while it may start its car

before the passenger has had time to take a seat, or secure his hold on the strap, it must exercise the utmost care in starting so as not to jar or upset him

III.   Counsel call our attention to some authorities to support the proposition that carriers of passengers by street cars, are not bound to the same degree of care as carriers by steam.   Care and negligence are relative terms.   The degree of caution, both by carrier and passenger, is to be estimated in a measure, by the hazard to life and limb.   It is always such care and vigilance as a prudent, rational person would exercise under like circumstances.   *Flynn v. Railroad,* 78 Mo. 195.

IV.   It is not necessary to decide whether the petition in question would be liable to demurrer.   It is amply sufficient to support a verdict for the plaintiff on issue joined.

The judgment of the court of appeals is affirmed and cause remanded accordingly.   All concur.