DOUGHERTY v. THE MISSOURI RAILROAD COMPANY, *Appellant.*

1. **Horse Railroad**: INJURY TO PASSENGER: DEGREE OF CARE REQUIRED IN OPERATING CARS. In an action against a horse-railway company for an injury received by plaintiff as a passenger on one of its cars, occasioned by a sudden and violent starting of the car, an instruction that, to defeat a recovery, the burden of proof rests upon the defendant to show to the satisfaction of the jury that the injury was caused by something not under its control, and not from the use of unsuitable or skittish horses, or careless or unskillful driving or management of the car, and that by the utmost human foresight, knowledge, skill and care such injury could not have been prevented by defendant, is erroneous as stating too broadly the degree of care incumbent on the defendant (*On rehearing*).

2. ——— : ——— : NEGLIGENCE: INSTRUCTION. An instruction in such case that although the jury may believe that plaintiff was guilty of negligence at the time of the injury, yet if they believe that such negligence did not contribute to or cause the injury, or if they find that defendant's servants or agents were negligent in the management of the car, or in the use of unsuitable horses, and that if there had been no such negligence on the part of defendant said injury would not have happened, notwithstanding the negligence of plaintiff, they should find for plaintiff, is erroneous as being inconsistent with itself and as abolishing the doctrine of contributory negligence. (*On rehearing*).

3. **Practice** : NEGLIGENCE : INSTRUCTION. In an action for negligence, an instruction authorizing a recovery, without stating the affirmative defense of contributory negligence, will not cause a reversal, where such defense is properly presented by other instructions.

4. ——— : INSTRUCTIONS. An instruction which correctly states the law, as far as it goes, but which does not attempt to cover the whole case, is not objectionable, and its deficiency may be properly supplied by looking to other instructions in the cause.

5. **Horse Railroad** : PERSONAL INJURY : EVIDENCE. In an action against a horse railway company for injuries sustained by the sudden and violent starting of a car, evidence of a former driver of the same car, who was in business on the line of defendant's railway at the time of the accident and for some time prior thereto, that during his service as driver four teams were used to the car in question, one of which was intractable and the others gentle and that he had observed no change in the teams up to the time of the accident, will not constitute reversible error, although he could not state that the intractable team was in use at the time of the accident.

6. ——— : ——— : DAMAGES. In such action where it appears that plaintiff's injuries were such as to necessitate the amputation of his arm ; that his sufferings were great and his expenses heavy ; that he was an expert telegraph operator, receiving a salary of $144 per month, and sometimes earned fifty dollars per month extra, and that his value and usefulness as a telegraph operator were greatly impaired by the injury, probably to the extent of one half, it cannot be said that a verdict for $12,000 is excessive. ·

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

REVERSED AND REMANDED.

*Dyer, Lee & Ellis* for appellant.

(1) The evidence shows the plaintiff guilty of contributory negligence as pleaded in defendant's answer. (2) The tenth instruction on the subject of contributory negligence given by the court, was error. *Zimmerman v. Railroad*, 71 Mo. 476–80 ; *Harlan v.*

*Railroad*, 65 Mo. 22–25; *Nelson v. Railroad*, 68 Mo. 593; *Cagney v. Railroad*, 69 Mo. 416; *Rains v. Railroad*, 71 Mo. 164; *Maher v. Railroad*; 64 Mo. 267; *Kelly v. Railroad*, 75 Mo. 138–40; *Werner v. Railroad*, 81 Mo. 368–74; *Price v. Railroad*, 72 Mo. 414–19; *Strauss v. Railroad*, 75 Mo. .185; *Yarnall v. Railroad*, 75 Mo. 575; *Ashbrook v. Railroad*, 18 Mo. App. 290, 305–6; *Welch v.. McAllister*, 13 Mo. App. 90; *Scoville v. Railroad*, 81 Mo. 434. (3) Instructions numbered three and five, given at the instance of the defendant, correctly defining contributory negligence, did not cure the error of the court in giving plaintiff's instruction number ten, and are contradictory to and in conflict with said instruction, whereby the jury were misled. *Rains v. Railroad*, 71 Mo. 164; *Strauss v. Railroad*, 75 Mo. 185, 191; *Yarnall v. Railroad*, 75 Mo. 575, 580, 583; *Price v. Railroad*, 77 Mo. 508; *Stevenson v. Hancock*, 72 Mo. 612; *State ex rel. v. Anert* 2 Mo. App. 295; *St. Louis Type Foundry v. Union Printing Co.*, 3 Mo. App. 142, 150; *Singer Manufacturing Co. v. Hudson*, 4 Mo. App. 145; *Scoville v. Glasner*, 79 Mo. 449, 457. (4) Instruction number twelve given in behalf of plaintiff is erroneous and misleading because out of four or five different facts which the answer charges as contributory negligence, the instruction selects but two, thus giving these two an undue prominence and also giving the jury to understand they are not to consider the evidence tending to establish the other facts, which are charged as constituting contributory negligence. *McDermot v. Railroad*, 87 Mo. 285; *Musser v. Adler*, 86 Mo. 445, 450; *Maxwell v. Railroad*, 85 Mo. 96; *Bank v. Murdock*, 62 Mo. 70; *Hines v. McKinney*, 3 Mo. 382; *Sigerson v. Pomroy*, 13 Mo. 620; *Clark v. Hamerlee*, 27 Mo. 55; *Mead v. Brotherton*, 30 Mo. 20; *Semour v. Semour*, 67 Mo. 303; *Jackson v. Bowles*, 67 Mo. 609; *Kendig v. Railroad*, 79 Mo. 207; *Crews v. Lackland*, 67 Mo. 619; *Wyatt v. Railroad*, 62 Mo. 408; *Chouteau*

*v. Jupiter Iron Works*, 83 Mo. 73. And the fifth instruction given in behalf of plaintiff is open to the same objection. This instruction entirely ignores the consideration by the jury of contributory negligence on the part of the plaintiff, and tells the jury that the only exception to the responsibility of the defendant for the injury, is, "unless it appears from the evidence that said jerk was produced by some cause not under the control of defendant or its agents, servants or employes." This instruction singles out one of several exceptions to the liability of the defendant, and ignores our entire defense in the case. Besides being open to all the objections to the twelfth instruction given in behalf of the plaintiff, it is in no way cured by the general instruction given by the court to the effect that the jury are to consider all the instructions together. ( 5 ) The third instruction given in behalf of plaintiff is erroneous in that it requires of the defendant company "the exercise of the utmost human foresight, knowledge, skill and care." This is an extreme and unfair statement of the law upon this question. This is liable to the same objection as the last instructions quoted— and besides the true rule on this subject, as laid down by this court in this very cause is "such care and vigilance as a prudent, rational person would exercise under like circumstances." *Dougherty v. Railroad*, 81 Mo. 325, 331 ; *Flynn v. Railroad*, 78 Mo. 195 ; *Morgan v. Cox*, 22 Mo. 373. ( 6 ) The testimony of Newton Jarrett as to one of the four teams, which had been used by him six months before the accident, on the car in controversy, being unsafe and skittish, without being followed by proof that such team was on the car at the time of the accident should have been excluded. Its only effect could have been to prejudice the defendant in the minds of the jury and lead them to the conclusion that the defendant was generally negligent in having skittish teams, although the same were not in use at the time of the accident. It further appeared by the

undisputed testimony of the driver that the team referred to by Newton Jarrett was not on the car on the night in question. (7) The damages assessed by the jury were not compensatory, nor in any sense an indemnity; they were excessive, and intended by the jury to be punitive. The amount of the verdict is grossly excessive and is, under the testimony, sufficient ground for reversal. *Collins v. Railroad*, 12 Barb. 492; *Murray v. Railroad*, 47 Barb. 196.

*Boyle, Adams & McKeighan* and *W. B. Thompson* for respondent.

(1) The proof was ample on the part of respondent to charge appellant with negligence, and there was no evidence in the case tending to show that the respondent was guilty of any contributory negligence under any proper consideration of the law and the evidence in this case. *Dougherty v. Railroad*, 9 Mo. App. 483; s. c., 81 Mo. 325. (2) Appellant misconstrues instruction ten; it does not mean and was not intended by the court to mean what is claimed, and could not have been so considered by the jury. (3) But if it were admitted that instruction ten, or instructions five and twelve given for respondent, were ambiguous, or obscure or faulty in their phraseology, it is clear that the other instructions given by the court both for the respondent and the appellant relieved them of any such ambiguity or fault, and therefore it is apparent from all the instructions taken together that the jury were not misled, especially as the jury were expressly told by instruction fourteen that all the instructions were to be taken and read together. *Hoenchen v. O'Bannon*, 56 Mo. 289; *Porter v. Harrison*, 52 Mo. 524; *McKeen v. Railroad*, 43 Mo. 405; *Marshall v. Ins. Co.*, 43 Mo. 586; *Moore v. Sanborn*, 42 Mo. 490; *Karle v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 323; *W. S. M. Co. v.*

*Railroad,* 71 Mo. 203 ; *Cooper v. Johnson,* 81 Mo. 483. (4) The judgment was for the right party, and the judgment will not be reversed although erroneous or faulty instructions are given. *Noble v. Blount,* 77 Mo. 235 ; *Galbreath v. City,* 80 Mo. 584 ; *Methudy v. Ross,* 81 Mo. 481. (5) The third instruction given for respondent, that the appellant was bound to exercise the utmost human foresight, knowledge, skill and care, is correct, and expressly so declared by the decisions of this court. *Lemon v. Chanslor,* 68 Mo. 340 ; *Coudy v. Railroad,* 85 Mo. 79 ; *Dougherty v. Railroad,* 81 Mo. 325 ; *Stokes v. Salstonstall,* 13 Peters (U. S.) 181 ; *Railroad v. Pollard,* 22 Wall. 341. (6) The amendment of respondent's petition did not change the gist of or the cause of the action, and hence the amendment related back to the commencement of the action. The plea of the statute of limitations did not therefore affect the matter of detail set up by way of amendment. *Kellebrew v. Stockdale,* 51 Tex. 520 ; *Crockett v. St. L. T. Co.,* 52 Mo. 557 ; *Lotham v. Barnett,* 62 Mo. 159. (7) The conversation with Wells amounted to nothing. Mr. Wells made no declaration for or against the company, although we think that what he said as chief executive officer of the company would have been admissible, if he had said anything, which it seems he did not. Besides the appellant in cross-examination of respondent first brought up the talk with Wells. (8) There is no error in the record as to the admission of testimony of drivers and conductors. In the first place it was competent, relevant and material ; and in the next place none of it was objected to except certain parts of Jarrett's for specific reasons, and except Meagher's which was only admitted after he had sworn that the mode of operating cars on the People's and the appellant's line was the same. (9) There was no error in respondent being allowed to show how the male patrons of appellant, without objection on its part, took seats in order to

avoid getting up for ladies. It tended to show what was ordinary prudence under such circumstances; we hardly think it cut much figure either way in the case. (10) The matter of cross-examination of the appellant's driver as to the Feehan accident was not objected to when the questions were asked, and it was discretionary with the court to exclude it, no objections being made at the time. It was, however, a very trifling matter. Of course it was not error to reject the record in the Feehan case. (11) The testimony of Jarrett as to the horses was competent, relevant and material. It showed the character of horses used on that particular car a short time before, that there had been no change (which was a presumption of law unless a change had been shown by the appellant). (12) The damages allowed by the jury were not excessive. The injury was great, the loss great, the suffering extreme and long continued, and the expenses great. The amount of damages in such cases is peculiarly within the province of the jury, and a court rarely interferes, unless at first blush the damages seem outrageous and flagrantly excessive. *Kennedy v. Railroad*, 36 Mo. 351 ; *Porter v. Railroad*, 71 Mo. 67 ; *Frick v. Railroad*, 75 Mo. 595 ; *Waldheir v. Railroad*, 87 Mo. 37.

RAY, J.—Upon a former trial of this cause plaintiff was compelled at the close of his evidence to submit to a non-suit, but on writ of error to the St. Louis court of appeals the judgment of the circuit court was reversed. 9 Mo. App. 483. On writ of error by defendant to this court, the judgment of the court of appeals was affirmed. 81 Mo. 325. There has since been another trial of the cause in the circuit court which resulted in a verdict for plaintiff in the sum of twelve thousand dollars and judgment thereon, from which defendant has appealed to this court.

At the second trial, now under review, an amended

petition was filed containing the allegation of the original petition as given in 81 Mo., and other allegations, ( as to which some questions are now made ) as follows : " Plaintiff states that the horses hitched to said car were wild, scary, untractable and skittish and that said sudden and violent jerk and movement of said car causing said injury to the plaintiff was due, not only to the careless, negligent and unskillful manner in which the servants and employes of said defendant started and set in motion said car, but as well to the wild untractable, scary and skittish character of the horses hitched to said car, which unsafe character of said horses was long before well known to said defendant, its officers, agents and employes, before said occurrence and yet said defendant, contrary to its duty, carelessly and negligently continued to use said horses in the transportation of its passengers and the plaintiff as one of them on the occasion referred to."

These allegations, thus added, were not necessary to enable plaintiff to make the proof necessary to his *prima-facie* case, which if made as might be done, under the circumstances of the case, by showing the injury to plaintiff whilst a passenger in defendant's car, would have devolved upon defendant the burden of showing, among other things upon the issue as to its negligence, that the team employed was a proper and suitable one. *Dougherty v. Railroad*, 81 Mo. 330 ; *Hipsley v. Railroad*, 88 Mo. 348 ; Angell on Carriers, sec. 569. This presumption would itself stand in lieu of the actual proof as to the character of the team, until rebutted by the evidence on defendant's part. In this view, and under these authorities, the allegations were immaterial, unnecessary and harmless.

But if plaintiff saw fit not to rest his case upon the presumption in his favor arising upon the proof aforesaid, but desired to offer testimony to show defendant's negligence in the designated particular, then we see no

good and sufficient reason why evidence as to the disposition of the horses, whether vicious or not, might not be received under the allegation that "defendant, its agents, servants, etc., disregarding its and their duty to the plaintiff as such passenger, so carelessly and negligently operated said car" as to cause the injury to plaintiff complained of. The amendment did not go to the gist of the cause of action, or substitute or add any new cause of action, but was, we apprehend, a specification of negligence already involved and embraced in the other allegations which were in themselves sufficient upon the proof mentioned to create the presumption of negligence or to admit direct testimony in that behalf.

Other questions involved arise upon the court's action in the matter of instructions. Our attention has not been directed by counsel to any error in the instructions refused for defendant, unless it be the ninth, which presented defendant's theory as to the act of neglect set forth in the amendment to plaintiff's petition and is the converse of the ninth given for plaintiff and was, we hold, properly refused, for the reasons already given. As to the others, their refusal was justified for the reason that the matters embraced therein were covered by those previously given in the cause. The refused instructions therefore may be dismissed without further notice.

On the part of plaintiff the court gave the following :

"1. The court instructs the jury that if they believe from the evidence that the plaintiff was, at the time of the occurrence in question, a passenger on one of the cars of the defendant's street railroad, exercising reasonable care and diligence, and that the car started before plaintiff took his seat with a sudden and violent jerk, that by reason thereof the plaintiff lost his balance and his hand was thrown against and through one of the windows of the car, cutting and injuring it, then and in that case the defendant is liable to the plaintiff for

the damage caused by and resulting from said injury to the plaintiff; unless the jury further believe from the evidence that the defendant, its agents, servants and employes managing said car were not guilty of any negligence or want of care in the management of said car causing the injury, and the burden of showing such care and want of negligence is upon the defendant to prove to the satisfaction of the jury.

"2. The court instructs the jury that if they believe from the evidence that the plaintiff was, at the time of the event in question, a passenger on one of defendant's cars, then the defendant owed to the plaintiff the duty of exercising the utmost care and vigilance to carry him over its road safely, and is responsible to the plaintiff for any neglect or want of proper care which the jury may find from the evidence if they so find causing the injury in question arising from the management of the car and horses by the defendant's servants or employes, or from the use of skittish or unsuitable horses, causing the injury in question.

"3. The court instructs the jury that if they believe from the evidence that, at the time of the event in controversy in this action, the defendant was engaged in the business of operating a street railroad for the transportation of passengers in the city of St. Louis, that at said time, the plaintiff was received on one of its cars as a passenger to be transported thereon, and that, while in said car for said purpose, he was injured by a sudden and violent starting of the car, then the burden of proof rests upon the defendant to prove to the satisfaction of the jury that said injury was caused by something not under the control of defendant and not from the use of unsuitable or skittish horses, or careless or unskillful driving or management of said car, and that by the exercise of the utmost human foresight, knowledge, skill and care, such injury could not have been prevented by defendant, its agents or servants; and unless the jury so believe they will find for the plaintiff.

" 4.   The court instructs the jury that if they believe from the evidence that the plaintiff was a passenger on one of defendant's cars and while exercising reasonable care and diligence with respect to his own safety the car started with a sudden and violent jerk, causing the injury now being inquired into, then the burden is thrown upon the defendant to show to the satisfaction of the jury that the horses hitched to the car were suitable for the service in question, or that the accident was not due to the horses, and that the servant of defendant managing the car exercised the utmost care, skill and foresight in the management of the same, or that the accident occured by reason of some cause not under the control of defendant, or its servants and employes ; and unless the defendant has so satisfied the jury, their verdict should be for the plaintiff.

" 5.   The court instructs the jury that if they believe from the evidence that the plaintiff at the time of the injury in question went upon the defendant's car, as a passenger and there was a vacant seat ; then and in that case it was the bounden duty of defendant, its servants and employes either to not start the car until he had time to get a seat, or if it started it before to use the utmost care to start it smoothly and in such a manner as not to throw him off his feet.   And if the jury believe from the evidence that the car was started before the plaintiff had reasonable time to take his seat and with a sudden and violent jerk which might have been avoided, causing said injury, the jury will find for the plaintiff unless it appears from the evidence that said jerk was produced by some cause not under the control of defendant or its agents, servants or employes.

" 6.   The court instructs the jury that if they find for the plaintiff they will assess his damages at such sum, not exceeding what, as they may believe from the

evidence, will compensate him for amounts paid and con-tracted to be paid for medical attendance and attend-ance of nurses, if necessarily employed, and all mental and bodily pain and anguish they may believe from the evidence the plaintiff suffered, together with such sum or sums as will compensate plaintiff for any permanent injury and incapacity they may believe from the evi-dence he has sustained from the injury in question but not exceeding the amount claimed in the amended petition.

"7. The court instructs the jury that although when the occurrence in question happened the plaintiff had not paid his fare and by reason of said event got off without paying; yet if the jury believe from the evi-dence that he went on the car as a passenger with the intention of paying his fare when called upon, then he was a passenger and the defendant owed to him the same duties as if, in fact, he had paid his fare.

"9. The court instructs the jury that the express and specific allegations in plaintiff's amended petition with respect to the horses hitched to the defendant's car do not change the cause of action originally sued on, and the defense of the statute of limitations set up in the defendant's answer should be disregarded by the jury.

"10. The court instructs the jury that although they may believe from the evidence that the plaintiff was guilty of negligence on his part at the time of the injury in question; yet if the jury further believe from the evidence that such negligence did not con-tribute to or cause the injury, or if they find from the evidence that the defendant's servants or agents were negligent in the management of the car or in the use of unsuitable horses, and that if there had been no such negligence on the part of defendant, said injury would not have happened, notwithstanding

the negligence of plaintiff, then the jury will find for the plaintiff.

"12. The court instructs the jury that although they may believe from the evidence that if the plaintiff had on entering the car taken hold of a strap or taken a seat nearer the door than the one he attempted to take, the accident would not have happened.; yet if the jury further believe from the evidence that he acted with reasonable and ordinary care, in not taking hold of a strap or in moving further forward, and as a prudent man under similar circumstances would ordinarily act, then he was using all the care and diligence imposed by law upon him.

"13. The court instructs the jury that if they find from the evidence that any witness has wilfully and corruptly sworn falsely to any material fact in the case, the jury may disregard the whole of his testimony.

"14. The instructions of the court are all to be taken and read together and the law therein laid down applied by the jury to the facts of. the case accordingly as the jury may believe and find the facts to be, under the evidence before them."

The court gave the following instructions asked by the defendant:

"1. The court instructs the jury that even though they believe the defendant company was to blame in starting the car in which plaintiff was standing with a violent and unusual jerk, and before plaintiff had an opportunity of taking his seat; yet if the jury also find that plaintiff was informed by the conductor's striking the bell, or in any other way knew or had reason to expect the car was about to start, then it was the duty of the plaintiff to have protected himself by the most prudent means within his reach against the starting of the car. And if you find that straps were provided in said car for the use or convenience of passengers, by which the plaintiff, after the warning of the conductor's bell, might have supported himself while the car was

being started, and that he failed so to do, and by reason of such failure he was injured, then you will find the issues for defendant.

"2.   The court instructs the jury that it was not the duty of the defendant company to provide the plaintiff with a seat in the forward part or any particular part of its car ; nor was it the defendant's duty to plaintiff to provide him with two seats, one for himself and one for Mr. McCreary ; nor to provide plaintiff with room enough for himself and Mr. McCreary ; nor was it the duty of the defendant to wait before starting its car until plaintiff could reach seats for both himself and Mr. McCreary ; nor was it defendant's duty to wait before starting its car until plaintiff had walked to the forward part of the car if there was a seat for plaintiff nearer than that.

"3.   The court further instructs the jury that although they may believe that the negligence or want of care of the agents and servants of the defendant contributed to the happening of the injury to plaintiff, yet if they believe from the evidence that the plaintiff was likewise guilty of negligence or want of care, which directly contributed to produce said injury, the verdict must be for the defendant.

"5.   The court leaves it to you to determine in view of the evidence and the circumstances of the case whether plaintiff was himself guilty of any fault or negligence that directly contributed to produce the injury in question, and you should determine this fairly, under the evidence, without bias for or prejudice against either party ; and if you find the plaintiff guilty of such fault or act of neglect, then you will find in favor of the defendant.

"6.   The court instructs the jury that the defendant is not liable for any damage that resulted to the plaintiff by reason of any lack of care on his part in properly caring for and treating the wound which he

received while in the car of the defendant, and if the jury believe from the evidence, that by any act of imprudence on plaintiff's part, or that by want of proper care or treatment of the wound received by plaintiff, the said injury was thereby aggravated to such an extent as to render necessary the amputation of plaintiff's arm, then the defendant is not liable for the damage to the plaintiff resulting from such amputation."

The objection taken to the third in the series for plaintiff, is that it requires of the company "the exercise of the utmost human foresight, knowledge, skill and care." These terms of strict care so employed in the instruction may apply, as counsel suggests, with special propriety to such common carriers of passengers as railroads operated by steam, but they are also held applicable to common carriers of passengers generally. Hutchinson on Carriers, secs. 500–504 ; *Lemon v. Chanslor*, 68 Mo. 340 ; *Citizens' Railway v. Twinane*, 10 West. Rep. 824 ; *Dougherty v. Railroad*, 81 Mo. 330 ; *Kelly v. Railroad*, 70 Mo. 609 ; *Leslie v. Railroad*, 88 Mo. 55.

The fifth given for plaintiff is complained of for the reason that it ignores the contributory negligence of plaintiff, and authorizes and directs a verdict for plaintiff, without regard thereto. A similar omission in an instruction of this sort was held fatal error in the case of *Sullivan v. Railroad*, 88 Mo. 169, but the doctrine of that case has recently been overruled in the late case of *Owens v. Railroad*, 95 Mo. 169, and upon the authority of the *Owens case* just cited, and under the views there adopted by a majority of my associates, the omission of the defense of contributory negligence from the instruction under review is not to be regarded as fatal error, requiring a reversal of the judgment in the cause. My individual views as to this question are set forth in the opinion in the *Sullivan case*, already referred to, but the instructions in this case, taken as a

whole, are, in my judgment, far more satisfactory than those in the *Sullivan case.*

Instruction number 12, given in plaintiff's behalf, is complained of as erroneous and misleading, because it is claimed the instruction selects but two of the different facts charged in the answer as contributory negligence, and thus gives them undue prominence, and impliedly directs the jury, it is claimed, not to consider the evidence, if any, tending to prove the other facts, not mentioned in the instruction, but charged in the answer as contributory negligence. The instruction is not fairly subject to these criticisms. It will be observed that it does not undertake to cover the entire case, and does not, upon a finding of the facts submitted, authorize a verdict in the cause. Properly limited and considered in reference to the matters treated of, the instruction is not, we think, objectionable. It cannot be said as matter of law that the duty absolutely devolved on plaintiff to take hold of the strap immediately on entering the car, or to take the seat nearest to the door, and it is in reference to plaintiff's conduct in this behalf that the jury are told, that, if they believe from the evidence that he acted with reasonable and ordinary care in not taking hold of a strap, or in moving forward, and as a prudent man, under similar circumstances would ordinarily act, then he was using all the care and diligence imposed by law upon him. It is with respect to such instructions, good as far as they go, but not complete in themselves, and not attempting to set out and cover the case, that reference may most appropriately be had to other instructions in the cause, and the series looked to and judged in its entirety. The prominence given in the evidence and cause, to the question as to the proper use of the strap by passengers on such cars, not improperly perhaps, called for a more specific instruction than would ordinarily be necessary, as to what, under the law, would be the duty of plaintiff in that

behalf, and under other instructions in the cause the whole subject of plaintiff's conduct, as to this feature as well as the other acts alleged in the answer as negligence on his part, was, we think, properly submitted to the jury for their determination.

Again, we think defendant's counsel misconstrues instruction numbered 10, given for plaintiff. It does not, as we read and understand it, say as counsel claims that where the negligence of plaintiff as well as that of defendant, contributed to the injury alleged the defendant is liable. Its very terms, we think, limit the negligence of plaintiff which may co-exist with liability on the part of defendant to such as does not contribute to or cause the injury. If however by reason of its construction it may be somewhat involved, or obscure, the other instructions in the cause unquestionably remedy that defect.

Instructions numbered one, three and five, given for defendant, which are exceptionably strong for defendant, are not, we think, contradictory and taken together they set out the law, in this behalf, as favorably as defendant could ask, and in terms so plain, that the jury could have hardly failed to understand and apprehend their meaning. This disposes of the principal objections urged against the court's action in the matter of instructions.

The objections to them, it will be observed, arise mainly upon the issue as to plaintiff's contributory negligence. As to the evidence upon that issue, it is sufficient to say, that the facts are in dispute and doubt, the evidence conflicting, and that defendant, manifestly has no reason to complain that the issue was sent to the jury for their determination.

A question is also made upon the admission of portions of the testimony of the witness, Newton Jarrett, who had been, it seems, several months prior to the date

of the injury to plaintiff, in the employment of defend-
ant, as a driver of the car in which plaintiff was after-
wards injured. His testimony as to the matter to be
considered in this connection, was, that during the
period of his service as driver in charge of the car in
question, four certain teams belonged to and were used
in the operation of said car. He further testified that,
after leaving his said employment, which it seems, he
did in November or December, 1876, he was engaged in
business for the next six or twelve months, at a telegraph
office, which it appears, is situated on the line of this
street railroad, and that he thus had opportunity to see
the car passing back and forth every day during the
winter and spring and summer following, which includes
the date of injury which occurred in April, 1877, and
that so far as he observed or knew, there was no change
in the teams used in connection with the car in question.
One of these teams was composed, as he testifies of a
stallion and gelding, which were troublesome and very
mean in starting the car with a jerk ; that the drivers
complained of this team, which he testifies, "would draw
themselves in the collar and back up the traces and as
soon as the bell would tap unless the driver held his
reins tight, one of the horses would throw himself right
forward and start the car with a jerk." The three other
teams, he says, started of their own accord, in such a
manner as not to produce a jerk to the car.

We are not prepared to say that there was error in
the admission of Jarrett's testimony in this behalf,
requiring a reversal of the judgment in the cause. True,
he says he does not know that this team was in fact
attached, but his testimony further is, that the other
teams ordinarily and regularly used with this intract-
able team in drawing the car in question, were gentle,
and started the car when the bell tapped in such
manner as not to give the car a jerk, and that this was

so, even if the driver was himself to some extent negligent and careless. The driver, Lyon, in charge of the car at the time subsequently testified for defendant that the team in use was a certain team of mares, and he was, we believe, the only witness who attempts to identify directly and positively the particular team in use at the time. But his statement in that behalf was not necessarily undisputed or conclusive. His testimony in its entirety was before the jury and its credibility was for them. The evidence in the cause indicates that by means of the reins and the car-brake, the driver could effectually control the horses and the movements of the car, and upon the issue as to defendant's negligence the real question was, we think, whether the defendant had overcome plaintiff's *prima-facie* case, and shown that the driver was without negligence or fault as to his management and control of the motive power. And this was for the jury under proper instructions.

A remaining question urged in the argument, is that the damages are excessive. Plaintiff's left hand and arm were, in consequence of the fall given him by the violent jerk of the car, thrust through the glass window of the car, and a severe and painful wound, and some smaller cuts perhaps, were inflicted upon his left hand. His health, for several months, was seriously affected, and loss of life was threatened for a time. After ineffectual efforts to save the hand, which was injured in April, it became necessary in the following July, to amputate the same, which was done about two inches below the elbow. His sufferings were great, and his expenses and liabilities for medicines, nurse-hire, physicians and surgeons very heavy, amounting to something like two thousand dollars. At the time of the accident he was manager of the Gold and Stock Telegraph Company, which was engaged in the business of furnishing stock, grain and provision quotations to

brokers and the Merchants' Exchange of St. Louis. His salary amounted to one hundred and forty-four dollars per month, and being an expert or first-class telegraph operator, he also sometimes earned fifty dollars per month extra. During his sickness his employers continued him his salary, so that he lost no wages during that time, and he continued thereafter and up to the time of trial to earn as much salary as before the accident. There is evidence to show that his value and usefulness as a telegraph operator were greatly impaired, to the extent perhaps of one-half.

This is, we believe, the substance of the evidence bearing upon the question now before us. The case, it may be observed, is free from malice or wanton misconduct on the part of defendant or its servants. The instruction given by the court in this behalf, limits the recovery to compensating damages, and has not been objected to, and is substantially correct. The verdict was for twelve thousand dollars. As is said in the case of *Waldhier v. Railroad*, 87 Mo.: "It is a matter of much difficulty, in such cases as this, to tell when the verdict is or is not excessive. * * * The amount of damages must be left largely to the reasonable discretion of the jury." In that case where the plaintiff had lost both legs, a verdict for twenty-five thousand dollars after a *remittitur* for five thousand dollars and the accrued interest, was suffered to stand. In the case of *Porter v. Railroad*, 71 Mo. 66, where the injuries to plaintiff resulted in the amputation of one leg, and two toes of the other foot, a verdict for ten thousand dollars was not disturbed. In these and other cases, large verdicts have been allowed to stand. In the case at bar, the jury, in the exercise of their sound and reasonable discretion in the matter, might well have returned a verdict for a lower sum, but we are not prepared to say that the sum given is so large as to unmistakably evince prejudice and passion on the part of the jury and abuse of their discretion in the matter.

Some other exceptions were taken at the trial and are urged here, which have been considered, but which we deem it unnecessary to discuss. This leads to an affirmance of the judgment of the trial court, and it is, accordingly so ordered, with the concurrence of all the judges.

## On rehearing.

RAY, C. J. — This case, on rehearing, has been thoroughly re-discussed by counsel, and their respective briefs carefully re-considered by the court. The result reached by a majority of the court is, that they have not been able to concur in so much of the opinion heretofore filed as approves of instructions numbered ten and three, given in said cause. On the contrary, they are of opinion and so hold, that said instructions (especially number ten) are misleading and erroneous, and for that reason, the judgment should be reversed, and the cause remanded, and it is accordingly so ordered. It is true that instruction number three, seems to have been often approved by this court, and courts elsewhere, but as often, the courts have felt and recognized the propriety, if not necessity, of explaining and construing the same. Number three seems to state the abstract proposition somewhat too broadly as to the degree of care incumbent on the defendant. Number ten is also obnoxious to the criticism of being somewhat inconsistent with itself, if not practically abolishing the doctrine of contributory negligence altogether; or, in other words, allows the plaintiff to recover, regardless of his own negligence contributing to his injury. See authorities cited in appellant's briefs. In these views, SHERWOOD, BLACK and BRACE, JJ., concur; BARCLAY, J., not sitting.

For myself, I adhere to the views heretofore expressed in the original opinion, in reference to

instructions numbered three and ten. Whatever view I might entertain if the doctrine of number three was now up for the first time, I apprehend, it has been too often approved and too long acquiesced in, to be departed from, in the present case.