[No. 6271. Decided November 14, 1906.]

LOUISE M. PLATTOR, *Respondent*, v. SEATTLE ELECTRIC
COMPANY, *Appellant*.[1]

APPEAL—REVIEW—NEW TRIAL—VERDICT WHEN SUPPORTED. The
fact that plaintiff swore falsely in the identification of a conductor
on a street car would only affect her credibility in relation to the
material facts testified to, and would not warrant the setting aside
of a verdict on the theory that her testimony, which was uncorrob-
orated, was false.

CARRIERS—NEGLIGENCE IN STARTING CAR—QUESTION FOR JURY. The
negligence of a street car conductor in starting a car before a pas-
senger is able to take her seat is for the jury, where the passenger
was a woman weighing two hundred and sixty-eight pounds, and was
leading by the hand a child two years of age, and where the con-
ductor had had his attention especially called to her condition, and
started the car as she got inside the door, and before she had time
to take a seat.

Appeal from a judgment of the superior court for King
county, Hatch, J., entered November 13, 1905, upon the
verdict of a jury rendered in favor of the plaintiff, after a
trial on the merits, in an action for personal injuries sus-
tained by a passenger in the negligent starting of a street
car. Affirmed.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.
*Clay Allen*, for respondent.

DUNBAR, J.—An examination of the record warrants us in
adopting the statement made by the appellant in this case.
Plaintiff claims to have been injured by the negligence of
the defendant company as follows: She was forty-five years
of age, weighing at the time two hundred and sixty-eight
pounds. No pretense was made that she was feeble, or that
she was not able to handle herself, or get on or off cars with-

[1]Reported in 87 Pac. 489.

out assistance. She approached one of the defendant's cars, having with her a child two years old, which was able to walk, and which she was leading by the hand. The car upon which she took passage was one of the ordinary cable cars, with open seats at either end, the center of the car being closed. When the car stopped at the place she was standing, she lifted the child, and attempted to put it upon the platform of the car. The car, however, started before she was able to get on, and she pulled the child back off the platform while the car advanced about ten feet. She then followed the car, placed the child upon the platform, got on to the platform herself, holding the child by the hand and permitting it to walk in front of her, passed through the door into the inclosed portion of the car. After she passed through the door, the signal to start the car was given, and she describes what befell her then as follows:

"Q. After you passed through the door of the car, tell the jury exactly what happened, just describe to them exactly. A. Just as I passed through the door the signal was given for the car to start, and immediately the gripman responded, throwing me forward with a jerk of the car. Q. Indicate on here where you were. A. I was just inside the door when the signal was given. Q. Where had you taken a seat? A. I had not had time to start to take my seat; I was inside of the door. Q. About what position in there were you when the car pushed forward—started? A. Why, I wasn't over a foot from the door of that car when the car gave a lurch, throwing me forward. Q. In what position relative to the seat of this car were you when the car actually started? A. I hadn't had time to turn myself around to sit down. Q. Where was the baby at that time? A. Right in front of me and I had hold of her hand. Q. Describe to the jury just exactly what happened when the car started. A. It threw me forward with a lurch. Q. And then what did you do? A. I threw out my hands and caught on the opening below the window to save me going to the floor. Q. What happened next; tell the jury. A. I caught myself on the window and seated myself, fell on the seat striking my limb on the edge of the seat."

It does not appear that there was anything extraordinary about the movement in starting the cable car, or that the starting was in any wise different from the ordinary and usual movement of the cable car in starting. During the trial the plaintiff identified one Evett as being the conductor in charge of the car at the time she was injured. It is claimed by the appellant that it is established beyond controversy that Evett was not the conductor on the car upon which the respondent claims that she was riding at the time of the alleged injury, and the assignments of error are that the court erred in overruling defendant's challenge to the sufficiency of the evidence and in overruling defendant's motion for a new trial. These assignments are based upon two questions: (1) Did the plaintiff, assuming her story to be true, establish negligence on the part of the defendant company in the operation of its cars? (2) Shall a verdict for the plaintiff be permitted to stand in a case of this nature, when it has been established, with almost the certainty of a mathematical demonstration, that the story of plaintiff, which was uncorroborated, was false?

We will first notice the second proposition. Of course, if the fact were established that the story of plaintiff was false, the verdict should not be allowed to stand. But the statement assumes the question in controversy. We do not think that the mere fact that the respondent swore positively that Evett was the conductor on the car upon which she alleged she was hurt would necessarily prove that the testimony, in relation to the material fact of whether or not she was hurt in the manner described by herself, was untrue, even conceding that it is conclusively proven that Evett was not the conductor operating the car at the time. An examination of the whole record has failed to convince us that the respondent intended to deliberately swear falsely in her identification of Conductor Evett. The most that can be adduced from the whole record is that she was mistaken. At least, it was only a question that affected the credibility of her

testimony, and that was a question which was properly submitted to the jury.

The next proposition, first stated by the appellant, involves the question of whether, conceding the statement of the respondent to be true, there was any negligence on the part of the conductor, or any duty on his part to see that she had reached her seat before starting the car in the manner in which it is alleged and proven that it did start. Many cases are cited by both the appellant and the respondent, but the citation of authorities on this question is of little benefit, for the reason that it is conceded by the appellant that negligence might well be permitted to be predicated upon the fact that a car was started before a passenger, who was manifestly weak, crippled, or infirm, had reached a secure seat; while the respondent concedes that the weight of authority, as well as the experience on which these authorities base their conclusions, do not require in all cases, and under all circumstances, a street railway operator to wait until a passenger shall have had time and opportunity to reach a seat, before starting the car. No two cases are exactly alike, so far as the appearance of the party injured and the surrounding circumstances are concerned, and the question in this case is not so much what the general law is, as under what principle of law the facts in the case fall.

The correct principle, which is deducible from all the better reasoned cases, is that the conductor, having supervision and control of the car and of the passengers on the car, must exercise that supervision in a reasonable way, taking into consideration the appearance of the passengers, and the circumstances surrounding them. It is the infirmity of the passenger, and his incapacity to protect himself, that he must take notice of, no matter whether that infirmity is produced by age or from being crippled, or from the ravages of disease or from excessive obesity. Or it might be that a passenger who was young, agile and alert, would be incapacitated from protecting himself from the sudden lurch of a car

for the reason that his hands were occupied by holding a child or some other burden. In all such cases the conductor should see that the passenger has time to obtain his seat before the car is started with such suddenness as to imperil his safety. This, doubtless, is more or less burdensome upon the conductor, but it is a burden imposed in the interest of common humanity, and for the welfare of the public.

Under this rule the question then is, was there anything in the appearance of the respondent which would indicate to a watchful conductor that she required more than ordinary consideration? It cannot be denied, as a rule, that excessive flesh is burdensome, rendering its unfortunate possessor more or less helpless and clumsy. This woman was five feet and four inches in height, and weighed two hundred and sixty-eight pounds, being about twice the weight of the ordinary woman of her height, a condition which should have challenged the attention of the conductor in whose care and charge she had placed herself. Besides this, she was burdened with the care of a little, toddling child, just able to walk, which ought to have been the especial care of the conductor; and one of her hands was engaged in trying to direct and protect the child at the time of the accident. In addition to this, the conductor's attention had just been called to the slow, clumsy condition of respondent, by her ineffectual attempt to board the car with the child, necessitating the stopping of the car a second time for the purpose of allowing her to get on. We think this was a case calling peculiarly for special care on the part of the conductor, and that there was ample testimony to sustain the verdict of the jury.

The judgment is affirmed.

MOUNT, C. J., RUDKIN, FULLERTON, and HADLEY, JJ., concur.

CROW and ROOT, JJ., took no part.