STODDARD, Appellant, v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, March 15, 1904.

1. CARRIERS OF PASSENGERS: Duty to Passengers Boarding Car. A street railway company, in receiving passengers into its cars, is bound to give them reasonable time to reach places of safety therein.

2. ———: ———: Time to Board Car in Safety. And, in an action for injuries received while boarding defendant's motor car, where the evidence showed that plaintiff, after getting on the rear platform, was thrown and hurt by the sudden lurching of

the car in starting before she could get further, she made out a prima facie case of negligence on the part of defendant, which proximately caused her injuries.

3. ———: ———: Signal to Stop. After the defendant's car stopped to receive passengers, it was its duty to allow plaintiff to get safely aboard, notwithstanding plaintiff did not signal the car to stop, in the absence of evidence of contributory negligence on the part of plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss,* Judge.

Reversed and remanded (*with directions*).

*Christian F. Schneider* and *Stephen Cornelius* for appellant.

(1) The implied contract which a common carrier owes to a passenger is to carry him safely and if the passenger be injured by the carrier, while the relation of carrier and passenger exists the burden is upon the carrier to show that the injury was not occasioned by its negligence. Sweeney v. Railway, 150 Mo. 397; Och v. Railroad, 130 Mo. 51; Dougherty v. Railroad, 81 Mo. 328. (2) It is the duty of a common carrier after it has received a passenger, to so manage its cars as to give him a reasonable opportunity to get to a place of safety therein. Coudy v. Railroad, 85 Mo. 79; Barth v. Railroad, 142 Mo. 542, 42 L. R. A. 293; Madden v. Railway, 50 Mo. App. 676; Smiley v. Railway, 160 Mo. 629.

*McKeighan & Watts* and *Wm. R. Gentry* for respondent.

If the plaintiff, on such meager testimony, was entitled to go to the jury, then anyone who carelessly stands on the platform or walks in the aisle of a moving car without using any precaution to prevent being

thrown by the natural motion of the car, and is injured thereby, can bring a suit and recover when there has been no negligence whatever on the part of the defendant. No negligence having been shown, the peremptory instruction should have been given. Pryor v. Railway, 85 Mo. App. 367; Portuchek v. Railway, 74 S. W. 368; Saxton v. Railway, 98 Mo. App. 494; Bartley v. Railway, 148 Mo. 124.

BLAND, P. J.—Plaintiff, while a passenger thereon, was injured by falling upon the rear platform of one of defendant's street railway cars. The suit was to recover damages for injuries to her person caused by the fall. She recovered a verdict in the court below which, on motion of defendant, was set aside and a new trial granted. From the order granting the new trial plaintiff appealed. The ground assigned by the trial judge for setting aside the verdict is that the court erred in refusing defendant's instruction, offered at the close of plaintiff's evidence, to the effect that on her own showing she was not entitled to recover.

The negligence alleged in the petition is that after defendant stopped its car to receive passengers the plaintiff proceeded to board the car as a passenger, "but before she was able or had time to safely and fully board said car and while she was still upon the rear platform thereof and in the act of entering said car, the said car suddenly jerked and lurched forward thereby throwing the plaintiff violently and with great force against the rear end and floor of the platform of said car, causing her to be seriously hurt and injured in and about her back, spine, limbs and body; that said injuries were caused by the defendant's agents, employees and servants carelessly and negligently causing and permitting said car suddenly and in the manner aforesaid to start, jerk and lurch forward before plaintiff had safely and

fully entered said car and before she had reasonable time to safely and fully enter said car.''

Plaintiff located herself on Old Manchester Road, in the city of St. Louis, and testified:

''I walked into Arthur avenue and Old Manchester Road. As I got that far, that was two blocks from Sutton avenue, and then I just got in time. There was a car coming and I went across the road. Others were there waiting for the car and the car stopped, and they got on the car ahead of me, and then I got on the car, and as I got on the first step the car started up, and as I got on the rear platform it gave a jerk and threw me back against the rear end of the car.

''Q. Just as you were in the act of getting in the car? A. Just as I was facing —

''Q. (Interrupting.) What happened then—when it jerked back what did it do? A. I fell to the floor and I got hurt and there was a couple of men I believe, I know they carried me in the car.''

On cross-examination, her evidence in respect to the fall is as follows:

''Q. You fell after you got upon the platform? A. Yes, sir.

''Q. Just as you were going in the door? A. Yes, sir, as I got upon the platform.

''Q. So the starting of the car didn't make you fall. It was this jerk afterwards? A. The jerk of the car throwed me.

''Q. I say it was not the starting of the car when you were on the step that made you fall. It was the jerk after you got upon the platform? A. It was the jerk.

''Q. After you got on the platform? A. Yes, sir, after I got on the platform. I was upon the platform.

''Q. So you got on the first step and then got on the platform, and you walked to the door, and before

you entered the door you fell, is that right? A. I didn't get in the car at all.

"Q. No; I didn't say you did. If you will listen carefully there will be no mistake about this. You got on the first step and then on the platform? A. Yes, sir.

"Q. Then you walked to the door? A. Well, I just turned around to attempt to go in the door, and the car gave a sudden jerk and throwed me down.

"Q. What sort of a jerk was that, madam? A. Well, I can't explain it. It was the jerk that throwed me.

"Q. Was it the movement that ordinarily takes place when a car starts? A. Oh, it was a sudden jerk. It was more than that.

"Q. You have stood in cars, have you not, when they were moving and stopping and everything? A. Yes, sir, I have.

"Q. You have noticed the necessity when cars are starting and stopping of holding on to a strap or holding on the edge of the seat, have you not? A. Yes, sir.

"Q. Whenever a car starts it is apt to give some sort of jerk, is it not? A. Well, I don't know. Sometimes it is. I have noticed it a good many times when I have been out on them.

"Q. I mean generally when the cars start, if you are standing up, it is necessary to hold onto something or somebody to keep from upsetting or losing your balance? A. It ain't all the time.

"Q. I didn't say all the time, I said generally? A. Well.

"Q. Is not that so? A. It may be, I couldn't give you a decided answer about that.

"Q. Was not that movement which you say caused you to fall just such a movement as generally takes

place when a car starts? A. It was more of a jerk than that or it would not have thrown me back.

"Q. Can't you tell us what sort of jerk it was? A. It was jerk enough to throw me back.

"Q. Three or four men got in ahead of you? A. I believe they did. Some men got in.

"Q. Did it throw any of them down? A. I don't know.

"Q. If they had fallen, would you have seen it? A. I don't know. I was not looking after them any.

"Q. You didn't see anybody else fall? A. I didn't see anybody else fall.

"Q. Are you perfectly sure that you didn't step on your skirt and trip there? A. No, sir, I didn't step on my skirt.

"Q. You are sure of that, are you? A. Yes, sir, I am sure of that.

"Q. Now, when you fell, did you fall down on the platform in a heap or did you fall against the rear dash-board of the car? A. No, I fell back against the dash-board. I got a jerk enough to throw me back against the dash-board. Then I fell on the floor.

.        .        .        .        .        .

"Q. Did you see anybody hail the car? A. There was a man hailed it.

"Q. Were you there before he hailed the car? A. Yes, sir, I was there.

"Q. Where were you standing with reference to the man? A. Back of the man. That's why I expect he got on before I did. Two or three or maybe four.

"Q. Did they get on ahead of you? A. Yes, sir, they did.

"Q. You were the last to get on? A. Yes, sir, I believe I was. I didn't see anybody get on after me.

"Q. Now, did you have hold of anything with either of your hands at the time you were jerked back?

A.   Well, not at that time.   When I first started to get on the car I caught hold of that bar to get on the car. The car started when I was on the first step.   Then when I got on the platform I aimed to get hold of something but I got jerked.   That threw me back.

"Q.   Were you reaching forward at the time you got jerked back?   A.   I believe I was for I had turned around to go in the car."

*William Vaughn*, a witness for plaintiff, testified as follows:

"A.   I was not looking out of the window, that is, the window was closed.   I was merely with my head turned.   The conductor was up about the center part of the car.   I am not positive whether he was collecting fares or not.   Anyway he gave a signal, and as he gave the signal I saw that she was not quite on or hadn't got a footing.   I turned around this way then to look out the door.   I could see she fell down because I couldn't see her above the window line there in the back.   A gentleman rushed from—I guess he sat about five or six seats from the back on the north side.   He rushed out there, and him and another gentleman brought the lady in and sat her right in the next seat right in front of me.

"Q.   What was the movement of the car at that time?   A.   Well it was just like ordinarily when they give a signal the car will kind of lurch a little that way enough of course if a person is not holding he will be thrown, even standing in the car holding.

"Q.   This car lurched, did it?   A.   Yes, sir.

"Q.   Did you feel that lurch?   A.   About like that (indicating).   Of course sitting in a chair that way and looking around I could feel it too.

"Q.   You felt it?   A.   Yes, I could feel the lurch a little."

On cross-examination he testified as follows:

"Q. Well just one or two questions. This lady, Mrs. Stoddard, says that she had got upon the platform and got to the door of the car when she fell. Now you don't know just where she was when she fell? A. I know she hadn't got to the door.

"Q. What? A. She hadn't got to the door. She might have been to the edge.

"Q. Well she says she was right near the door when she felt this lurch. A. I expect she was about there.

"Q. Did you feel any lurch of the car other than the motion that the car made when it started? A. Oh, no, as it starts up it will give a lurch like.

"Q. Did you feel any jerk after that? A. No, sir.

"Q. You are sure of that? A. Oh, well, yes, sir.

"Q. Now the plaintiff states that the car started when she was on the first step, is that your idea? A. I think she must have been upon the platform because I couldn't see her when I was looking backward. If she had been upon the step I would have been more apt to see her.

"Q. You felt no jerk at all except the one movement when the car started up? A. That's all.

"Q. That's the sort of movement that you ordinarily feel when a car starts up? A. Yes, sir.

"Q. And you didn't notice that any more than you notice any other movement when a car starts? A. No, I don't know that I did."

This was all the evidence offered by plaintiff relevant to the cause of the injury.

The evidence offered by the defendant did not strengthen plaintiff's case. As is shown by her evidence, the plaintiff is forty-nine years old and the mother of several grown children, and is a plain, truthful, working woman. Her evidence shows that the car

started before she had reached the platform, but it does not appear that she was disturbed in her movements by the starting of the car, and she reached the platform in safety and had her face towards the door of the car with a view of entering it when, by a lurch of the car, she was thrown backward upon the platform just at the moment she let go her hold on a handle bar and was reaching forward to get hold of something else to enable her to enter the door of the car. Her evidence shows that the lurch of the car which threw her was more than an ordinary lurch occasioned by the starting of an electric car, although the evidence of plaintiff's witness, Vaughn, was that there was no unusual lurch in the motion of the car. He further testified—and it is common experience—that the ordinary jerk or lurch made by starting an electric car is sufficient to throw an ordinary person standing in the car or on the platform without support, and we think the plaintiff is probably mistaken in her belief that the lurch which caused her to fall was greater than the ordinary lurch made by the starting of a car, and hence if she was entitled to go to the jury, it must have been upon the ground that the car was started before she had time sufficient to reach a place of safety aboard the car. Barth v. Railway, 142 Mo. 535; was an action against an elevated railway company operated by electric power. The deceased was thrown and killed by the starting of the car when he was on the steps. The court, at page 550, said: "A common carrier of passengers is bound to allow its passengers reasonable time to enter and leave its cars, and while it may start before a passenger has been seated, it must exercise the highest degree of care that prudent and cautious persons would use and exercise under similiar or the same circumstances, in starting its cars so as not to suddenly jerk or jar him and thereby injure him. Dougherty v. Railroad, 97 Mo. 647; Smith v. Railroad, 108 Mo. 243; Jackson v.

Railroad, 118 Mo. 199; Gilson v. Railroad, 76 Mo. 282; Furnish v. Railroad, 102 Mo. 438; Jacquin v. Cable Road, 57 Mo. App. 320.''

In Dougherty v. Railroad, 81 Mo. 325; s. c., 9 Mo. App. 478, the evidence showed that the plaintiff had boarded defendant's car on Olive street, in the city of St. Louis, and moved rapidly forward about half way the length of the car and was just in the act of turning around to take a seat when the car started forward with a violent jerk, upsetting him. He grabbed for a strap but failed to reach it; to save himself he placed his left hand against the window but his fall was so violent that his hand crashed through the window and was lacerated. He was nonsuited at the trial. The judgment of nonsuit was reversed by this court and again by the Supreme Court. The latter court, at page 330, in respect to the obligation of the carrier said: ''With respect to the obligation of the defendant to the plaintiff as a passenger, it is sufficient to say, that while it is not an insurer of the safety of passengers, it is bound by its office, as such carrier, to exercise due care and vigilance, so as to safely transport them. It must allow reasonable time for passengers to enter and leave its cars with safety, in the exercise of ordinary care. It should allow the passengers reasonable time to enter and take a seat, if there be one, or reasonable time to seize straps furnished for passengers when standing; and while it may start its car before the passenger has had time to take a seat, or secure his hold on the strap, it must exercise the utmost care in starting so as not to jar or upset him.''

In Akersloot v. Railroad, 15 L. R. A. (N. Y.) 489, it is said: ''The conductor of a street car must see that a passenger entering the car is in a place of safety before he gives the signal to proceed, and the passenger is entitled to damages if he is thrown down and injured by the premature starting of the car.'' The same ruling was made in Central Railway Company v. Smith,

74 Md. 212; Steeg v. Railway, 50 Minn. 149, and in West Chicago Street Railway Company v. Craig, 57 Ill. App. 411.

In Holmes v. Allegheny Traction Co., 153 Pa. St. 152, it was said: "In an action against a street railway company to recover damages for personal injuries, it is proper to submit the case to the jury where testimony on behalf of the plaintiff, an elderly woman, although contradicted, tended to show that she entered a street car from the front platform on the invitation of the driver, and, before she was able to take her seat, the car was started with a jerk and plaintiff was thrown and injured."

The evidence and common experience that the starting of a street railway car propelled by electricity is ordinarily attended by a jerk or lurch sufficient to throw an unsupported person standing in the car, it seems to us is sufficient vindication of the doctrine of the foregoing cases as applied to street railway cars operated by electric power, and conclusively shows that plaintiff made a prima facie case and that the court erred in setting aside the verdict on the ground assigned. Defendant, however, contends that the court erred in refusing the following instruction asked by it:

"The court instructs the jury that if you believe from the evidence that when the car in question approached the far crossing of Arthur avenue, the plaintiff was on the north side of Manchester avenue, and after the car stopped, the plaintiff crossed behind the car and boarded same, and if you further believe from the evidence that the plaintiff gave no signal to defendant's motorman that she desired to board said car, and if you further believe from the evidence that the plaintiff in so boarding said car without giving a signal was guilty of negligence, and that said negligence directly contributed to cause the injuries complained of by

plaintiff, then and in that case your verdict must be for defendant.''

Defendant contends that for this error the motion for new trial should have been sustained. The evidence of both plaintiff and defendant shows that the car stopped for the purpose of receiving passengers. It is immaterial who gave the signal for it to stop. After stopping for the purpose of receiving passengers, it was the duty of the conductor to hold the car a reasonable length of time to allow the passengers, including plaintiff, to board the car and to reach a place of safety thereon before giving the signal to start. There is no evidence tending to show that such reasonable time was allowed plaintiff and hence there is no evidence that she was guilty of contributory negligence. The instruction was properly refused. The instructions given are in harmony with the views herein expressed and under the evidence the verdict is for the right party.

The judgment is reversed and the cause remanded with directions to the trial court to set aside the order granting a new trial, overrule the motion therefor and enter judgment for plaintiff on the verdict of the jury, with interest thereon at six per cent per annum from the date of the rendition of said verdict. *Reyburn* and *Goode, JJ.*, concur.