[No. 11717.  Department Two.  June 6, 1914.]

CHARLES H. RICE, *Respondent*, v. PUGET SOUND TRACTION, LIGHT & POWER COMPANY, *Appellant*.[1]

CARRIERS—INJURIES TO PASSENGERS—TAKING ON DISABLED PAS-SENGERS—SUDDEN STOPS—PROXIMATE CAUSE.  Where a street car was started before a passenger, walking with crutches, had time to get a seat, and he was thrown to the floor by an emergency stop which was necessary to avoid injury to a person on the crossing, the starting of the car before the passenger was seated was the proximate cause of his injury.

SAME—TAKING ON DISABLED PASSENGERS—SUDDEN STOPS—NEGLI-GENCE—QUESTION FOR JURY.  The negligence of a street railway com-pany in starting a car before a passenger, walking with crutches, could take a seat, is for the jury, where he was thrown to the floor by an emergency stop to avoid injury to a person on a crowded city crossing.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.  A verdict for $4,000 for injuries to a disabled knee, twice previously injured and already in a chronic tubercular condition, is excessive, and should be reduced to $2,500.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 21, 1913, upon the verdict of a jury rendered in favor of the plaintiff for $4,000 for personal injuries sustained by a passenger in a street car. Reversed, unless $1,500 is remitted.

*James B. Howe* and *H. S. Elliott*, for appellant.

*Arthur E. Griffin* (*W. H. Harris*, of counsel), for respond-ent.

FULLERTON, J.—The appellant owns and operates a sys-tem of street railways in the city of Seattle. The respondent was injured by the sudden stopping of one of the appellant's cars while a passenger thereon, and brought this action to recover in damages for the injury so received. At the trial, the jury returned a verdict in the respondent's favor in the

[1]Reported in 141 Pac. 191.

sum of $4,000, on which judgment was entered. This appeal followed.

The accident occurred on the Third Avenue line of the appellant. There is a double track line on this street which crosses the James street cable line at James street. The cars whichever way moving stop to receive and discharge passengers just prior to crossing James street. The car on which the respondent was injured stopped at the usual stopping place, and the respondent, with a number of other persons, entered it. The respondent had theretofore received an injury to his knee and was walking with crutches. After he had entered the car, and before he had reached a vacant seat, the car was started on the signal of the conductor. He continued on his way, and just as he reached a seat and was about to enter it, the car was stopped by the application of the emergency brakes. As a result he fell to the floor of the car.

There was evidence on the part of the appellant, to which there was little if any contradiction, to the effect that a car of the appellant had stopped on the other side of James street, and that, just as the front of the car on which the respondent was riding reached the back of such standing car, two men stepped out from behind the standing car and onto the track of the moving car, and that the stopping of the moving car by the application of the emergency brakes was necessary in order to avoid running them down.

The appellant first assigns error upon the refusal of the trial court of its motion for a directed verdict. It argues that, conceding it to be negligence on its part to start its car before the respondent had time to reach a seat, such act did not cause the respondent to fall, and hence, was not the proximate cause of the injury; that the proximate cause of the injury was the act of stopping the car in order to avoid running down the pedestrians who suddenly stepped in front of it, and that for this act it is not liable because it was called upon in an emergency to choose between two conflicting duties, and there is no evidence to show that it did not act as

a reasonable and prudent carrier of passengers would have acted under the circumstances.

It is probably the rule that, where a carrier of passengers is confronted with a situation not of its own making, where it is compelled to choose between the conflicting duties of avoiding injury to its passengers or injury to some stranger who has inadvertently placed himself in a dangerous situation with reference to the instrument of carriage, it is not liable for the injury to either the one or the other if it acts as a reasonably prudent person would have acted under the circumstances. But we think the facts shown here do not present the condition suggested. Contrary to the contention of the appellant, we think a street car company operating its cars in a crowded and populous city is bound to anticipate that it may be called upon to stop its cars suddenly at any time, and is bound to anticipate that such sudden stopping may cause injury to its aged, crippled and otherwise infirm passengers who have not had time to become properly seated before the starting of the car. This being the rule, it must follow that, in a case where an infirm passenger is injured while endeavoring to reach a seat, by the sudden stopping of the car, which has been started before he has had time to obtain a seat, the proximate cause of his injury is the starting of the car before such time, and not its sudden stopping after it had been once started without injury to the passenger.

Such is the case before us. The respondent was so far infirm as to require the use of crutches to enable him to walk. When he entered the car, it was the duty of the conductor to wait until he secured a seat before directing the car to start, and his failure to do so was negligence. At least, it was for the jury to say whether or not it was negligence, and in this case the trial judge submitted the question to them. *Plattor v. Seattle Elec. Co.*, 44 Wash. 408, 87 Pac. 489 ; *Stoddard v. St. Louis & M. R. R. Co.*, 105 Mo. App. 512, 80 S. W. 33 ; *Brady v. Springfield Traction Co.*, 140 Mo. App. 421, 124 S. W.

1070; *Steeg v. St. Paul City R. Co.*, 50 Minn. 149, 52 N. W. 393. Again,

"It is well established that, where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, if the negligent act of the defendant is a co-operating or culminating cause of the injury, or if the accident would not have resulted in an injury excepting for the negligent act, the negligence is the proximate cause of injury for which damages may be recovered." *Goe v. Northern Pac. R. Co.*, 30 Wash. 654, 71 Pac. 182.

See, also, *Williams v. Ballard Lumber Co.*, 41 Wash. 338, 83 Pac. 323; *Akin v. Bradley Engineering & Mach. Co.*, 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586; *Thoresen v. St. Paul & Tacoma Lum. Co.*, 73 Wash. 99, 131 Pac. 645, 132 Pac. 860.

It is contended that the verdict is excessive. The respondent was first injured in his knee in July, 1909. Following this, and as a result of the injury, he was, in October of the same year, compelled to suffer a surgical operation for the removal of a broken cartilage, which left him a cripple and necessitated his walking with crutches until June, 1911. He went to work for the first time in November, 1911, when he began operating an elevator. He continued at this work until June 26, 1912, when he was forced to stop because of tuberculosis developing in his injured knee. He again injured the same knee in June, 1912, which again compelled him to resort to crutches. These he was using at the time of the injury for which he sues in this action. His knee had not been free from tuberculosis from the time it first developed while operating the elevator, although it seemingly had been reduced to a more or less chronic state at the time he was last injured. In the light of these facts, we think the verdict excessive. The appellant was not responsible for the prior injuries to the knee, nor for its tubercular condition, yet we think the jury visited upon it the entire penalty. As we view the record, a recovery in excess of $2,500 would be excessive.

The judgment is therefore reversed, and the cause remanded with instructions to allow the respondent thirty days after the going down of the remittitur to elect in writing whether he will accept a judgment of $2,500, or submit to a new trial. If he elects to accept a judgment in the sum named, the trial court will enter a judgment in his favor for that sum. If he fails to so elect, a new trial will be awarded.

CROW, C. J., PARKER, and MOUNT, JJ., concur.