[No. 53261-8-I. Division One. February 28, 2005.]

DOROTHY M. WALKER, *Appellant*, v. KING COUNTY METRO ET AL., *Respondents*.

---

*Thomas G. Burke* and *Brian K. Snure* (of *Snure Regeimbal & Burke, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John F. McHale, Deputy,* for respondents.

¶1 BECKER, J. — Dorothy Walker was moving toward the back of a Metro bus when it stopped suddenly to avoid an accident. Walker fell and sustained injuries. She contends the bus driver was negligent in leaving the bus stop before ensuring that she was seated or braced. Because she has not introduced evidence establishing that such a practice breaches the standard of care, we affirm the trial court's grant of summary judgment.

¶2 Dorothy Walker, a regular bus rider, boarded a King County Metro bus at 44th Avenue South and Othello Street in Seattle about half past noon on a rainy December day in 2000. The seats in front that she preferred were occupied. As Walker made her way towards the back, the bus driver pulled away from the curb and into traffic along Othello Street. At the time, Walker was carrying her purse over her left shoulder and a tote bag in her left hand. Walker used her right hand to hold the stanchions or support poles as she moved back to find a seat.

¶3 Meanwhile, the bus went uphill towards the next cross street, which was 43rd Avenue South. The intersection was 150 to 200 feet from the bus stop where Walker got on. There were stop signs for the cross-street traffic. The bus driver testified he saw a Honda Accord properly stopped at the stop sign on his left. When the front of the bus was just about into the intersection, the bus driver saw the Honda abruptly pulling out into the intersection, and its driver looking in the opposite direction. The bus driver, who was driving no more than 12 or 13 miles per hour, quickly honked his horn and applied his brakes. Both vehicles came to a stop only inches apart from each other.

¶4 Hien Le, the driver of the Honda, testified that she had a clear view, looked both ways, and did not see any vehicles approaching as she pulled out into the intersection. Hien Le was not aware of the bus until she heard it braking, at which point she also applied her own brakes. Hien Le said there would have been a collision if both she and the bus driver had not applied their brakes.

¶5 Walker testified that she was holding onto a support pole but had not yet seated herself when the bus made the quick stop.[1] Walker fell backwards onto the floor as a result of the sudden braking and was injured.

¶6 Walker sued both Hien Le and King County Metro. The parties engaged in discovery. Walker eventually settled with Hien Le. Metro moved for summary judgment on the basis that the driver acted reasonably when confronted with a sudden emergency. The emergency doctrine does not apply if the emergency is brought about by the defendant's negligence. Walker responded that the driver negligently created the emergency by leaving the bus stop before she, a passenger carrying bags, was either seated or securely standing. The trial court granted Metro's motion, and Walker appeals.

¶7 We review summary judgment de novo, engaging in the same inquiry as the trial court and considering the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. CR 56(c).

¶8 The question is whether Walker has presented facts from which a jury could conclude the bus driver was negligent. An essential element of negligence is the breach of a duty owed to the person injured. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). The parties agree that Metro, as a common carrier, owes its

---

[1] Clerk's Papers at 65.

passengers "the highest degree of care toward its passengers commensurate with the practical operation of its services at the time and place in question." *Price v. Kitsap Transit*, 125 Wn.2d 456, 465, 886 P.2d 556 (1994). However, the duty or standard of care owed by a common carrier is not one of strict liability. A common carrier is not the insurer of its passengers' safety, and negligence should not be presumed or inferred from the mere happening of an accident. *Tortes v. King County*, 119 Wn. App. 1, 8, 84 P.3d 252 (2003).

¶9 Breach of duty is ordinarily a factual question. If there is any evidence tending to show that the carrier failed to comply with the required standard of care, then the question of negligence must be left to the jury. *Peterson v. City of Seattle*, 51 Wn.2d 187, 192, 316 P.2d 904 (1957).

 ¶10 Many cases brought by injured passengers have been dismissed for insufficient proof of negligence where the only allegation is that the bus came to a stop described as sudden or even violent. As Walker acknowledges, a carrier is not liable for injuries received from "ordinary jolts and jerks necessarily incident to the mode of transportation,"[2] unless there is evidence of physical facts from which operator negligence might reasonably be inferred. *See Brown v. Crescent Stores, Inc.*, 54 Wn. App. 861, 776 P.2d 705 (1989) and cases cited therein. Walker's primary theory is not that the operator was negligent in abruptly hitting the brakes, but rather that he was negligent in departing from the bus stop without waiting for her to be safely seated or braced.

¶11 Walker cites a factually similar case in which a jury verdict against a streetcar company was affirmed on appeal. *Rice v. Puget Sound Traction, Light & Power Co.*, 80 Wash. 47, 141 P. 191 (1914). The plaintiff, who had just boarded a streetcar and was in the process of finding a seat, fell to the floor and was injured when the car came to a sudden stop in order to avoid running down two pedestrians

---

[2] Br. of Appellant at 13.

who suddenly stepped in front of it. What distinguishes *Rice* from the present case is the fact that the plaintiff was walking with crutches; it was his visibly infirm condition on which the court premised the liability of the streetcar company:

> Contrary to the contention of the appellant, we think a street car company operating its cars in a crowded and populous city is bound to anticipate that it may be called upon to stop its cars suddenly at any time, and is bound to anticipate that such sudden stopping may cause injury to its aged, crippled and otherwise infirm passengers who have not had time to become properly seated before the starting of the car. This being the rule, it must follow that, in a case where an infirm passenger is injured while endeavoring to reach a seat, by the sudden stopping of the car, which has been started before he has had time to obtain a seat, the proximate cause of his injury is the starting of the car before such time, and not its sudden stopping after it had been once started without injury to the passenger.

> Such is the case before us. The respondent was so far infirm as to require the use of crutches to enable him to walk. When he entered the car, it was the duty of the conductor to wait until he secured a seat before directing the car to start, and his failure to do so was negligence. At least, it was for the jury to say whether or not it was negligence, and in this case the trial judge submitted the question to them.

*Rice*, 80 Wash. at 49.

¶12 *Rice* does not establish that the standard of care for a streetcar or bus always requires the driver to wait for passengers to be seated before the bus can move. No statute or regulation prohibits buses from operating while passengers are standing. Indeed, as Metro points out, Metro buses are designed with hand grips and stanchions on the assumption that passengers not infrequently will be standing while a bus is in motion. And Metro's book of instructions for its drivers provides that coach operators can start moving their buses once a boarding passenger has moved

from the area of the stairwell and farebox.[3] What *Rice* illustrates is that a common carrier's duty—which is to act with the highest degree of care toward its passengers commensurate with the practical operation of its services at the time and place in question—includes acting with the care that is "commensurate with its passenger's age, size and physical condition of which it had knowledge." *Brown,* 54 Wn. App. at 868.

¶13 While Walker does not contend that she was infirm or disabled, she does argue that she was similarly situated to an infirm passenger because of the two bags she was carrying. The record shows that she was carrying on her left shoulder a shoulder-strapped purse, about a foot wide and six or seven inches tall, and had in her left hand a tote bag containing a newspaper, an umbrella and a book.[4]

¶14 A Metro policy provides that when a passenger is "visibly laden," the operator should wait for the passenger to be seated before leaving a bus stop. The driver was asked during his deposition whether Metro had any rules addressing what to do when someone boarded a bus carrying "bags or bundles."[5] He did not have the rulebook with him and responded there is "something about that; if they come on and they have bags in their hands, that we should allow them time to seat."[6] After the deposition, the driver read the rulebook and clarified that the policy applied to situations when a passenger is "visibly laden" with bags or packages.[7]

¶15 To the extent that the Metro rulebook—very little of which is in the record—may establish the standard of care, no reasonable juror would conclude that Walker, with a purse and tote bag, was "visibly laden" to the extent that would require special consideration in seating. There is no

---

[3] Clerk's Papers at 109-10.

[4] Clerk's Papers at 64, 79.

[5] Clerk's Papers at 42

[6] Clerk's Papers at 42.

[7] Clerk's Papers at 112.

evidence that her purse and tote bag were unusually bulky or cumbersome. That she had only one hand free to grip the seats or the poles as she moved along would not have been perceived by a driver, in the exercise of appropriate care, as an unusual and onerous physical condition.

¶16 As additional evidence of the standard of care, Walker offers several paragraphs from the *Washington State Commercial Driver Guide* and the *Model Commercial Driver License Manual*. Both documents state that bus drivers should wait until their passengers are seated or braced before departing the loading area. But Walker did not provide the court with the complete documents and has provided no authority—from within the documents themselves or by testimony or case law—to show that these incompletely quoted documents establish a recognized standard of care for city bus drivers, or that they are intended to form the basis for legal action.

¶17 The lack of evidence of a standard of care distinguishes Walker's situation from another case on which she relies, *Boyd v. City of Edmonds*, 64 Wn.2d 94, 96, 390 P.2d 706 (1964). In *Boyd*, an elderly passenger fell when the bus driver, who was unable for some reason to pull up to the curb, allowed her to disembark onto the roadway. He did not assist her in getting out, he did not point out that it was a big step down, and he did not give warning of the pothole adjacent to the lowest step. Under these circumstances the court found no error in letting the question of the driver's negligence go to the jury. "It is the duty of a carrier to select a safe place for its passengers to alight," even though "the quantum of care to be exercised must be proportionate to the degree of danger inherent in the particular circumstances." *Boyd*, 64 Wn.2d at 96. In contrast to *Boyd*, here there is no recognized general standard of care requiring that the driver not move the bus until all passengers are seated. And there is no evidence that Walker had a distinctive physical condition that should have made the driver perceive a risk that would require treating her with greater care than other passengers.

■ ¶18 Walker also argues that even if the driver did not have to wait until she was seated or braced, she presented other evidence sufficient to prove that the driver was negligently operating the bus immediately prior to the accident. She says the evidence would allow the jury to find that the driver failed to honk his horn or give a verbal warning to his passengers before the emergency stop; was not wearing his glasses (though he was not legally required to do so); did not continuously watch Le's car at the stop sign; and was driving at an unsafe speed. (the bus was going approximately 13 mph). Again, the cited evidence does not tend to show that any of these acts or omissions violated a standard of care. Furthermore, the driver is entitled to the benefit of the sudden emergency doctrine. A bus driver who "was compelled to stop or slow down said bus suddenly to avoid collision with another vehicle" is not guilty of negligence so long as the emergency itself is not the result of the driver's negligence. *Nopson v. Seattle*, 33 Wn.2d 772, 788, 207 P.2d 674 (1949).

■ ¶19 To survive a motion for summary judgment, a party must respond to the motion with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues. *Ruffer v. St. Francis Cabrini Hosp. of Seattle*, 56 Wn. App. 625, 628, 784 P.2d 1288 (1990). Walker has not met this test.

¶20 The order of summary judgment is affirmed.

GROSSE and KENNEDY, JJ., concur.