FILED
11/27/2023
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOSEPH A. LOIGA, an individual,<br><br>Appellant,<br><br>v.<br><br>KING COUNTY, a governmental entity by and through KING COUNTY METRO and KING COUNTY DEPARTMENT OF TRANSPORTATION, governmental agencies; and ROXANNE DONALDSON, an individual,<br><br>Respondents. | No. 85109-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — While riding a King County Metro bus, Joseph Loiga fell out of his seat and hit his head on a metal partition behind the driver's seat. Loiga sued King County and the bus driver for negligent operation. Applying the higher standard of care owed by a common carrier, the trial court dismissed Loiga's claims on summary judgment. Because Loiga failed to provide evidence raising a question of material fact on the issue of breach of the common carrier's duty, we affirm.

FACTS

On June 23, 2018, Joseph Loiga suffered a fall while riding King County

Metro bus route 166.[1] He was sitting behind the bus driver, in one of the three adjoined seats parallel to the windows and facing the aisle. As the bus traveled down 104th Avenue SE, the car in front of the bus was making a right turn, but slammed on the brakes for a pedestrian crossing the street. Bus operator Roxanne Donaldson applied the brakes and the bus came to a stop. Loiga fell off his seat into the aisle and toward the front of the bus where he hit the top of his head on the metal partition behind the driver's seat.

After the fall, Loiga initially told Donaldson that he was fine but then requested medical assistance. The fire department dispatched an aid vehicle. EMTs[2] evaluated Loiga and reported that he "denied an [pain] on palp[ation] of his neck but a little bit of [pain] on the back of his head with no obvious deformities." EMTs placed Loiga in a cervical collar as a precaution. Loiga was eventually transferred by ambulance to Valley Medical Center.[3]

Loiga sued King County and Donaldson for negligent operation.[4] King County moved for summary judgment, arguing Loiga had failed to produce evidence of breach of any duty owed to him. The trial court granted summary judgment and dismissed the claims.

---

[1] We note that Loiga fails to provide citations to the record as required under RAP 10.3(1)(5).

[2] Emergency Medical Technicians.

[3] In his opening brief, Loiga claims he continued to experience pain, and progressive weakness, tingling, and numbness is his extremities and was diagnosed with "subacute C5-C6 cervical stenosis with cord flattening and signal change." However, the record contains no medical evidence after the ambulance transfer to Valley Medical Center.

[4] Loiga did not designate the complaint and the complaint is not in the record for review. This omission violates RAP 9.6(b)(1)(C), which requires, at a minimum, that the designated clerk's papers include the complaint. Information about the claim is taken from King County's request for summary judgment.

Loiga appeals.

DISCUSSION

We review orders on summary judgment de novo. Kim v. Lakeside Adult Fam. Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). We consider the evidence and reasonable inferences in the light most favorable to the nonmoving party. Kim, 185 Wn.2d at 547.

The moving party has the initial burden of showing the absence of an issue of material fact. In re Est. of Black, 153 Wn.2d 152, 160-61, 102 P.3d 796 (2004). If the moving party meets this burden, the nonmoving party must set forth specific facts to show a genuine issue for trial. Id. The facts must rebut the moving party's contentions and demonstrate the existence of a genuine issue of material fact. Citibank South Dakota N.A. v. Ryan, 160 Wn. App. 286, 289, 247 P.3d 778 (2011).

Loiga contends the trial court erred by granting summary judgment on his negligence claim against King County. To prove negligence, a plaintiff must show (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Generally, whether there has been negligence "is a jury question, unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the

courts." Hough v. Ballard, 108 Wn. App. 272, 279, 31 P.3d 6 (2001). The existence of a duty is a question of law. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Breach of duty, however, is ordinarily a factual question, and "if there is any evidence tending to show that the carrier failed to comply with the required standard of care, then the question of negligence must be left to the jury." Walker v. King County Metro, 126 Wn. App. 904, 908, 109 P.3d 836 (2005).

Here, both parties agree that King County Metro bus is a common carrier. "As a common carrier of passengers, a bus system owes the highest degree of care toward its passengers commensurate with the practical operation of its services at the time and place in question." Price v. Kitsap Transit, 125 Wn.2d 456, 465, 886 P.2d 556 (1994). However, a common carrier's duty of care is not one of strict liability, nor is a common carrier the insurer of its passengers' safety. Walker, 126 Wn. App. at 908. "[N]egligence should not be presumed or inferred from the mere happening of an accident." Id. Specifically, a common carrier is not liable for injuries received from "ordinary jolts and jerks necessarily incident to the mode of transportation," unless there is evidence from which operator negligence can be reasonably be inferred. Id.

In support of its motion for summary judgment, King County argues that Loiga has not set forth any facts that provide for an inference of bus operator negligence, and therefore, fails to meet his burden of demonstrating breach. In her deposition, Donaldson, who had approximately 30 years of experience as a bus driver, described her response to the car stopping quickly in front of her:

4

> So I put my brakes on. Now, that wasn't a slam of the brakes because I know what a hard brake is. I know what a medium, a soft brake. That was not a hard brake. That wasn't a hard brake. That was just, you know, stopping . . . between a soft and a medium.

Internal surveillance video from the bus supports Donaldson's report. When the bus stopped, the other people on the bus show little movement and no reactions of surprise or concern. Loiga, who was sitting on the edge of his seat facing the aisle and speaking with the person across from him, is not holding on to any fixed support in the bus and is the only one who falls. The evidence shows nothing more than the normal "jolts and jerks" associated with riding a bus.

A King County Metro Transit safety investigation into the incident determined that Donaldson "was exercising every reasonable defensive driving precaution to prevent this episode of a passenger fall." The investigation concluded the accident was "Non Preventable," meaning "the driver in question exercised every reasonable precaution to prevent the occurrence." The ambulance report notes that Loiga said "he was not ready for the stop," and "it was not the bus drivers [sic] fault but the driver in front of the bus." This evidence supports King County's argument that Donaldson did not breach the common carrier duty of care.[5]

---

[5] King County also argues that Loiga's three inconsistent answers to Interrogatory No. 5 ("Please give a concise statement of how the events giving rise to your lawsuit took place, including but not limited to your departing location and expected destination at the time of the INCIDENT alleged in your Complaint") do not support the claim of unusual or extraordinary braking by the driver. King County states that the first two answers are unsigned and the third is signed. However, the record, including the attorney declaration attaching the different versions, does not include evidence indicating whether any of the three versions were signed or unsigned. Therefore, we will not consider these interrogatory responses in our review of the evidence.

In order to defeat summary judgment, Loiga must rebut the State's contentions that Loiga's fall resulted from normal "jolts and jerks" and demonstrate the existence of a genuine issue of material fact as to the bus operator's negligence. Ryan, 160 Wn. App. at 289.

A. Alleged Admissions of Liability

Loiga contends King County admitted liability in its response to his requests for admission. Request for Admission No. 9 states, "Admit that the plaintiff, Joseph Logia [sic], was without fault in causing the collision which is the subject of this action." King County responded, "Objection, as worded this request for admission calls for a legal conclusion. Also, this request is vague regarding 'collision.' Without waiving said objection, King County admits." While King County's response does not explain which part of the statement it admits, it explicitly objected to both the request for a legal conclusion on liability and the unclear term "collision."[6] The response does not admit liability.

Similarly, Loiga asserts that Donaldson admitted liability in her deposition, claiming "she slammed on her brakes to avoid a collision." During the deposition, Donaldson was asked, "didn't you say in [the transit accident] report the vehicle in front of the bus suddenly stopped which caused me to slam on my brakes suddenly?"[7] Donaldson explained, "[w]hen I write my report, I don't really get into it say, okay, this was a soft slam. This was a medium slam. This was a hard

---

[6] On appeal, King County contends that because there was no collision, the word "collision" "would be interpreted as meaning the reason for the vehicle stopping."

[7] The record does not contain the transit accident report referenced in the deposition.

slam." Rather, she used "slam" when it was not "a regular just putting your brakes on." And, as quoted above, Donaldson stated that this incident did not involve a "hard brake." Donaldson's deposition testimony is not an admission of liability.

B. Evidence of Violation of Driving Laws

Loiga also attempts to argue breach of duty based on violation of two driving laws. Under RCW 5.40.050, "[a] breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence." See Smith v. Fourre, 71 Wn. App. 304, 309, 858 P.2d 276 (1993) (testimony that a truck turned without brake lights or turn signal, a violation of RCW 46.37.070, supports and inference of failure to use reasonable care).

According to Loiga, the bus operator drove in an inattentive manner, violating Kent Ordinance 9.36.020, which makes it unlawful for a person to operate a motor vehicle in a "lax or slack manner."[8] Loiga cites Donaldson's deposition testimony:

> And then there was a car that was making a right-hand turn. There was – I didn't realize it until he, you know, was making his – because he came to a stop. The light was – I'm trying to think if the light was green or if it was red, but he came – he was making a right-hand turn, and I wasn't close to him. I was within distance, but there was a person crossing. That's why he slammed on his

---

[8] Kent Ordinance 9.36.020 provides:

A. It is unlawful for any person to operate a motor vehicle in an inattentive manner upon any highway within the city or way open to the public within the city that is maintained primarily for public use and is adjacent to any highway.
B. For the purpose of this section, *inattentive* means the operation of a vehicle in a lax or slack manner.

7

> brakes. He didn't see the person crossing, so that's what caused him to slam on his brakes because all of a sudden a person could be – you know, he wasn't paying attention or whatever, and this person wants to cross, and all of a sudden, you slam on your brakes.
>
> So I put my brakes on.

Rather than prove that Donaldson operated the bus in a "lax or slack manner," in violation of the ordinance, these statements suggest the other driver was inattentive because he did not see the person crossing the street. Loiga, himself, stated to the responding ambulance personnel his own conclusion that the driver in front of the bus was at fault. Moreover, Donaldson specifically addressed this issue during her deposition, stating, "I was aware of the guy. I was aware of the car that put his brakes on." Considering the evidence in the light most favorable to Loiga, the nonmoving party, no reasonable juror could conclude that Donaldson drove in a lax or slack manner, and, therefore, Loiga cannot rely on a purported violation of Kent Ordinance 9.36.020 as evidence of negligence.

In addition to alleging inattentive driving, Loiga claims Donaldson was driving too closely to the other vehicle in violation of RCW 46.61.145(1), which states that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." According to Loiga, "had the bus not been following too closely, the Operator would not have needed to slam on her brakes." This conclusory statement does not support that Donaldson was following too closely. Her testimony shows that she was aware of the vehicle in front of her and needed only between soft and medium braking to

bring the bus to a stop. Given the lack of evidence in the record that Donaldson was following the preceding vehicle unreasonably close, Loiga's conclusory statements to the contrary are insufficient to defeat summary judgment. See Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 954, 247 P.3d 18 (2011).

Loiga fails to raise a question of material fact as to any driving violation that would amount to a breach of the common carrier's standard of care. The record does not support his claim that his fall occurred as a result of anything more than the normal "jolts and jerks" experienced while riding a bus. Thus, Loiga cannot demonstrate breach of the duty of care owed by a common carrier. King County is entitled to a judgment as a matter of law, and the trial court properly dismissed Loiga's claim on summary judgment.

Affirmed.

_____
Chung, J.

WE CONCUR:

_____     _____
Birk, J.                                                    Dwyer, J.