# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JADE TROIKE, | No. 59136-7-II |
| Appellant, | |
| v. | |
| KING COUNTY, a Washington State municipality, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J.—In February 2020, fare enforcement officer Jade Troike boarded a King County Metro bus to check fares with her coworker, Yelena Nazariya. During their ride, both officers stood in the middle of the bus, where Troike held onto a support pole with her hand. Shortly after they boarded the bus, the bus approached a utility truck parked in the right lane of travel directly ahead of the bus. As the bus approached the utility truck, a car using the left lane of travel passed the bus, and the bus decelerated to avoid hitting the utility truck. According to Troike, the deceleration of the bus caused a significant jerk, and while she was able to continue holding onto the rail, she lurched forward and immediately felt pain in her shoulder. Nazariya, who was not holding onto anything, stumbled three steps forward. Several bus passengers grabbed a railing or support pole. Other passengers who were seated showed minimal movement. Troike and Nazariya testified that the bus driver was repeatedly looking in the mirror and not paying attention to the road prior to the incident.

After undergoing two surgeries for her shoulder, Troike sued King County for negligence. Troike claims that she was injured from an extraordinary jolt or jerk of the bus. King County moved for summary judgment, arguing that Troike failed to show evidence that established that the occurrence was of an unusual and extraordinary character, and evidence of its effect on the other passengers. The trial court granted the summary judgment motion. Troike appeals, asserting that the trial court erred in granting summary judgment because testimony and video evidence indicate that the bus driver was operating the bus in an inattentive manner, and therefore a genuine issue of material fact exists. King County responds that the trial court was correct in granting summary judgment because the movement of the bus was ordinary and the driver exercised due care while operating the bus and there is not a genuine issue of material fact on this question.

We hold that King County is not entitled to judgment as a matter of law because Troike demonstrated a genuine issue of material fact on both the question of negligence and the question of whether the bus made an extraordinary jerk or jolt. Accordingly, we reverse the judgment of the superior court and remand for further proceedings consistent with this opinion.

FACTS

I. THE BUS INCIDENT

In February 2020, during her work as a fare enforcement officer, Troike boarded a King County Metro bus with her coworker, Nazariya. As the bus traveled down a four-lane road with two lanes traveling in each direction, it approached a utility truck which was directly ahead of the bus in the same lane. The utility truck was stopped and the truck's lights were flashing. As the bus approached the utility truck, a car entered the left lane in order to pass the bus. Unable to move into the left lane, the bus decelerated to avoid hitting the utility truck. After the left lane cleared,

the bus moved into the left lane to pass the parked utility truck. The bus's deceleration occurred at least four seconds after the utility truck's flashing lights appeared in the video. A high-pitched noise that sounds like a vehicle braking can be heard in the video as the bus decelerated.

When the bus decelerated, Troike was standing with her left hand grasping the railing above her head. Troike testified that the deceleration of the bus caused her body to lurch forward. She explained that she continued to hold onto the railing in order to prevent herself from falling or colliding with another person or object. Troike testified that immediately after the bus decelerated, she felt pain in her left shoulder. As the bus decelerated, Nazariya, who stood in front of Troike, took three steps forward to prevent herself from falling.

Other passengers on the bus who were seated showed minimal movement during and immediately after the bus's deceleration. The video captured the following movements of the bus passengers: one passenger abruptly moved to their right toward the front of the bus and grabbed the railing; a passenger wearing a black coat and black pants grabbed a support pole; a passenger wearing a hat grabbed a support pole with their right hand, but their reaction was delayed; a passenger in a light blue jacket on a cell phone grabbed the bar over the seat in front of them; and a passenger wearing a hooded jacket and head phones moved to their right and grabbed a bar. The video also shows three passengers near the back of the bus who barely moved as the bus decelerated.

Troike began working as a fare enforcement officer in 2019 and Nazariya began working as a fare enforcement officer in 2017. According to Troike and Nazariya, their job duties required them to confirm that passengers paid the correct fare and navigate Metro buses while maintaining their balance. As Troike stated in her declaration, she had "become accustomed to the typical

bumpy and jerky movements that are common" in public transit. Clerk's Papers (CP) at 39. Troike and Nazariya testified that the bus movement on the day in question was not an ordinary jolt or jerk, but that the driver was inattentive and slammed on the brakes. According to Troike and Nazariya, the bus driver was looking "repeatedly in the rearview mirror" and was "not looking forward or paying attention to the traffic in front of him" prior to the incident. *Id.* at 39. Troike and Nazariya stated that if the driver was paying attention, he would not have needed to brake as forcefully as he did. The video evidence does not capture if, and how often, the driver was looking in the rearview mirror.

Troike immediately reported the incident to her supervisor after departing the bus. She testified that she suffered a significant left shoulder injury that required two surgeries and continues to cause her pain.

## II. PROCEDURAL HISTORY

In April 2023, Troike sued King County, arguing that the bus driver breached his duty of care by failing to drive in a reasonably safe manner which caused Troike's shoulder injury. Troike requested damages to reflect "physical and emotional pain and discomfort, disability, loss of consortium, society, and services of her spouse, . . . health care provider expenses, travel expenses necessary to secure health care provider treatment, . . . and other damages." *Id.* at 3. In response, King County moved for summary judgment. King County argued that Troike produced no evidence that the bus driver breached any duty owed to her. The trial court granted King County's motion for summary judgment because the incident was "nothing more than an ordinary jolt or jerk" and no evidence existed "to support a negligence claim." Verbatim Rep. of Proc. (VRP) at 13. The court explained that the video evidence showed that the passengers barely moved and the

bus made a smooth lane change, indicating that the bus did not slam on the brakes or suddenly decelerate.

## ANALYSIS

Troike asserts that the trial court erred in granting summary judgment. Troike argues that testimony from Troike and Nazariya and video evidence of passenger movement suggest that Troike's injury resulted from an extraordinary jolt or jerk of the bus. Further, Troike contends that testimony and video evidence show that the driver was operating the bus in an inattentive manner, which caused the injury. Troike argues, based on evidence she put forth at the summary judgment hearing, that the driver was negligent because he was looking in the rearview mirror too frequently instead of paying attention to the road. According to Troike, if the driver had exercised his duty to pay attention to the road, he would have noticed the utility truck in time to brake more softly.

King County responds that the trial court correctly granted summary judgment because no genuine issue of material fact existed concerning the driver's negligence. King County argues that the video evidence demonstrates that Troike's injury resulted from an ordinary movement of the bus. According to King County, the video evidence shows that the driver carefully changed lanes and the other passengers on the bus barely moved.

### I. LEGAL PRINCIPLES

A. Summary Judgment

In a motion for summary judgment, we consider "all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Rublee v. Carrier Corp.*, 192 Wn.2d 190, 199, 428 P.3d 1207 (2018). This court "review[s] summary judgment orders de novo, engaging in the same inquiry as the trial court." *Maslonka v. Pub. Util. Dist. No.*

5

*1 of Pend Oreille Cnty.*, 1 Wn.3d 815, 824, 533 P.3d 400 (2023). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Rublee*, 192 Wn.2d at 198; CR 56(c).

To overcome a summary judgment motion, "the nonmoving party must . . . 'set forth specific facts showing that there is a genuine issue for trial.' " *In re Est. of Black*, 153 Wn.2d 152, 160-61, 102 P.3d 796 (2004) (quoting *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975)). "A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue that controls the outcome of the litigation." *Hicks v. Klickitat Cnty, Sheriff's Off.*, 23 Wn. App. 2d 236, 242-43, 515 P.3d 556 (2022). To demonstrate a genuine issue of material fact, the nonmoving "party must respond to the motion with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues." *Walker v. King Cnty. Metro*, 126 Wn. App. 904, 912, 109 P.3d 836 (2005). However, there is no genuine issue of material fact when video evidence " 'blatantly contradict[s]' " the nonmoving party's testimony. *Berry v. King Cnty*, 19 Wn. App. 2d 583, 588, 501 P.3d 150 (2021) (quoting *Scott v. Harris*, 550 U.S. 372, 379, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

B. Negligence and Common Carriers

Negligence cases " 'are generally not susceptible to summary judgment.' " *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 685, 398 P.3d 1108 (2017) (internal quotation marks omitted) (quoting *Owen v. Burlington N. Santa Fe R.R. Co.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005)). "The elements of negligence are duty, breach, causation, and injury." *Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002). "Existence of a duty is a question of law." *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). A common carrier, such

as a King County bus operator, faces a heightened duty. *Walker*, 126 Wn. App. at 907-08. While not strictly liable for its passengers, a common carrier owes its "passengers 'the highest degree of care . . . commensurate with the practical operation of its services at the time and place in question.' " *Id.* at 908. In comparison, "[b]reach of duty is ordinarily a factual question." *Id.* Therefore, "[i]f there is any evidence tending to show that the carrier failed to comply with the required standard of care, then the question of negligence must be left to the jury." *Id.*

However, "a carrier is not liable for injuries received from 'ordinary jolts and jerks necessarily incident to the mode of transportation,' unless there is evidence of physical facts from which operator negligence might reasonably be inferred." *Id.* (quoting *Brown v. Crescent Stores, Inc.*, 54 Wn. App. 861, 863-64, 776 P.2d 705 (1989)). In *Walker*, Walker boarded a bus and began walking to her seat. *Id.* at 906. The bus entered an intersection, where the cross-traffic had a stop sign. *Id.* One car, after stopping at the stop sign, entered the intersection directly in front of the bus. Traveling around 13 miles per hour, the bus driver applied the brakes to avoid colliding with the car. *Id.* While standing and holding onto a support pole, Walker fell and sustained an injury. *Id.* at 907. Walker argued that the bus driver negligently operated the bus prior to the accident because he failed to warn passengers of the emergency stop, wear his glasses, continuously watch the car for movement, and drive at a safe speed. *Id.* at 912. Division One of this court affirmed summary judgment for King County. *Id.* According to the court, Walker did not "respond to the motion with more than conclusory allegations, speculative statements, or argumentative assertions" about unresolved facts. *Id.*

Conclusory statements to the effect that a jerk or jolt was extraordinary, or that a vehicle was driving too fast, or stopped too suddenly are not sufficient to establish a genuine issue of

material fact. *See, e.g.*, *Brown*, 54 Wn. App. at 864; *Wade v. N. Coast Transp. Co.*, 165 Wash. 418, 422, 5 P.2d 985 (1931). As the supreme court explained in *Wilcoxen v. City of Seattle*, 32 Wn.2d 734, 738, 203 P.2d 658 (1949), " '*there must be evidence inherently establishing that the occurrence was of an unusual and extraordinary character*, or evidence of its effect on other passengers sufficient to show this.' " (Internal quotation marks omitted) (quoting *Keller v. City of Seattle*, 200 Wash. 573, 581, 94 P.2d 184 (1939)).

## II. APPLICATION

Troike argues that the bus operator was negligent because he was looking in the rearview mirror too frequently instead of paying attention to the road. This negligence, she contends, caused the driver to brake suddenly and as a result, Troike experienced an extraordinary jolt that resulted in her injuring her shoulder. According to Troike, the video evidence shows that if the driver had exercised his duty to pay attention to the road, he would have noticed the utility truck in time to brake more softly.

King County responds that it is entitled to judgment as a matter of law because Troike provided insufficient evidence of driver negligence, and because the jolt Troike experienced was not extraordinary. We hold that Troike has demonstrated a genuine issue of material fact and King County is not entitled to judgment as a matter of law.

First, Troike has demonstrated a genuine issue of material fact that the driver operated the bus in a negligent manner, which caused the driver to brake aggressively and abruptly. Both Troike and Nazariya testified that they could see the utility truck stopped in the same lane as the bus several hundred feet away, but that the driver was looking "repeatedly in the rearview mirror" and "not looking forward or paying attention to the traffic in front of him." CP at 39. They also testified

that if the driver was paying attention, he would not have had to brake as forcefully as he did. Troike and Nazariya's testimony regarding the bus driver's inattentiveness and that he looked "repeatedly in the rearview mirror" are not conclusory allegations, speculative statements, or argumentative assertions. *Id.* Instead, their declarations indicate specific, nonconclusory facts regarding the driver's operation of the bus, thereby establishing a genuine issue of material fact. *Walker*, 126 Wn. App. at 911.

The video evidence shows that a utility truck was parked with its lights flashing in the lane ahead of the bus driver. The bus deceleration occurs at least four seconds after the flashing lights appear in the video. The video shows that as the bus approached the utility truck, a car passed the bus on the left-hand lane, restricting the bus driver's ability to enter the left lane. The bus driver applied the brakes to avoid colliding with the utility truck and entered the left lane after the car passed. The video evidence does not disprove Troike and Nazariya's assertions that the driver was not paying attention.

After hearing testimony and viewing the video evidence, a reasonable jury could conclude that the bus driver forcefully and suddenly applied the brakes due to inattentiveness. "If there is any evidence tending to show that the carrier failed to comply with the required standard of care, then the question of negligence must be left to the jury." *Id.* at 908. Such is the case here. The declarations of Troike and Nazariya, when taken in the light most favorable to Troike, raise a genuine issue of material fact and the video evidence does not disprove Troike's version of the events. As such, whether the bus driver slammed on the brakes due to negligence is a question of fact for the jury to decide.

Similarly, testimony from Troike and Nazariya establishes a genuine issue of material fact that the jolt of the bus that occurred when the driver braked was extraordinary. Troike and Nazariya testified that the bus driver slammed on the brakes, causing Troike and other passengers to lurch forward, and said that the "sudden and quick deceleration" that occurred when the driver slammed on the brakes was different than the ordinary bumps and jerks that passengers frequently experience while riding the bus. CP at 40. Troike testified that "this sudden and quick declaration was different than any other I had experienced." *Id.* Nazariya testified that "this was not an ordinary stop or jolt that would be expected on a Metro bus." *Id.* at 44.

King County, here again, argues that the video of the incident taken from the surveillance camera inside the bus incontrovertibly shows that no extraordinary jolt or jerk occurred. Having reviewed the video, and mindful of our obligation to take the evidence in the light most favorable to Troike, we disagree. As it relates to the jolt, the video depicts several passengers, not just Troike, lurching significantly when the bus slows. While the video evidence alone may not be enough to prove that the jolt of the bus *was* extraordinary, it does not, as King County suggests, contradict the declarations of Troike and Nazariya, and it does not disprove Troike's contention that she experienced an extraordinary jolt or jerk.

Taking the evidence in the light most favorable to Troike, she has established a genuine issue of material fact and King County is not entitled to judgment as a matter of law. The declarations of Troike and Nazariya are not conclusory, speculative, or argumentative assertions but rather are detailed factual descriptions of what they observed and experienced on the bus. *See Brown*, 54 Wn. App. at 864; *Walker*, 126 Wn. App. at 912.

The superior court erred in granting summary judgment in favor of King County.

No. 59136-7-II

CONCLUSION

We reverse the superior court and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                            CRUSER, C.J.

We concur:

MAXA, J.

PRICE, J.

11